McFARLAND and Another, Executors, *v.* GARBER.

A bond given by a debtor to secure to one of his creditors a secret preference over the others, as an inducement to him to sign a deed of composition, or other substantially similar instrument, is fraudulent and void, notwithstanding the creditor stipulating for such preference may have been the last to sign such instrument; and the debtor himself may set up the fraud, in defense to a suit upon the bond.

Good faith is required in every arrangement or settlement made by an embarrassed debtor and his creditors, whether it amount strictly to a composition deed or not.

APPEAL from the *Jefferson* Court of Common Pleas.

WORDEN, J.—This was an action by the appellants [as executors of *Barbara Forbes*, deceased,] against the appellee on a bond for the payment of 500 dollars. The complaint alleges that in the lifetime of said *Barbara*, to-wit, on the first of *May*, 1848, at the county of *Blair* in the state of *Pennsylvania*, the defendant executed and delivered to said *Barbara* his writing obligatory, (a copy of which is filed) whereby he bound himself to pay to said *Barbara* the sum of 500 dollars, as specified therein, in consideration of said *Barbara* executing a certain release of a claim held by her against said defendant, which claim she held as legatee of one *Christian Garber*, deceased; that on the first day of *June*, 1848, the said *Barbara* did, in consideration of the written obligation aforesaid, execute, by signing, sealing and delivering, the said release to said defendant, whereby, &c. The bond set out is as follows, viz.:

" Whereas *William Dorris*, executor of *Christian Garber*,

deceased, claims to recover of me moneys said to be owing by me to *C. Garber* deceased, which I say are not owing justly or legally; and whereas *Barbara Forbes* claims to be the legatee of the one-sixth of the said *C. Garber's* estate—and whereas the rest of the legatees, with the exception of the said *Barbara* and one other, have released all claims against me on the terms contained in the release, which terms were on my part fulfilled, and the said *Barbara* has heretofore declined to sign said release; now, in order to obtain her release also, but not admitting that there is one cent due by me to said *C. Garber's* estate, know all men by these presents that I do hereby agree and bind myself to pay to the said *Barbara Forbes* the sum of 500 dollars, as a full consideration of her alleged claim and releasing it.   Two hundred dollars, with interest from this date, on or before the first day of *May*, 1850, and the remaining three hundred dollars with interest thereon from this date, on or before the first day of *May*, 1852, without defalcation, for value received.

"Witness my hand and seal, this first day of *May*, 1848.

[Signed]          *M. C. Garber*,   SEAL."

The defendant filed an answer of several paragraphs, embracing—1. A denial of each and every allegation in the complaint. 2. Want of consideration. 3. That on the 22d day of *October*, 1844, one *Charlotte Hanks* and *Jarvis Hanks*, her husband, *Michael Garber*, said *Barbara Forbes* and one Mrs. *Rutter*, who were devisees of said *Christian Garber* deceased, pretended to have, as such devisees, a claim against the defendant for a large sum of money, which claim was a lien on certain real estate and other property of the defendant; and for the purpose of compounding the same with the defendant, and to effect a general composition of said claim between the defendant and said devisees, the said *Hanks* and wife, and the said *Michael Garber*, executed the release aforesaid, for the consideration therein expressed and no other.   And afterwards, on the first of *June*, 1848, the said *Barbara Forbes* signed and sealed the said release, for the consideration therein expressed, and for the further consideration that the defend-

ant had executed and given to her the said bond now sued on. That said bond was given without the knowledge or consent of the other compounding creditors, and was a fraudulent preference of the said *Barbara* over them, as an additional inducement to said *Barbara* to come into said composition, and execute said release, and for no other purpose or consideration whatever; wherefore, &c.

Issues were formed, and the cause was tried by the Court. The Court found for defendant, overruled a motion for a new trial, and rendered judgment on the finding. Exception was duly taken to the decision, and the evidence is set out. It appears from the bill of exceptions, that the Court found for the defendant on the ground that the release mentioned was, in effect, a composition deed among the creditors of said *Garber*, and that the bond sued on was a fraud on said creditors.

The plaintiffs gave in evidence the bond sued on, and the release in question. The release offered relinquishes all claims which the legatees of *C. Garber*, deceased, held against the defendant, except such portion of said claims as they could make out of property then held by him. It is signed by all of the legatees except Mrs. *Rutter*. It was signed by some of the legatees in *October*, 1844, but not by Mrs. *Forbes* until *June* 1st, 1848.

On the part of the defendant, it was proven by one *Joseph Kemp* that, some time in 1844 or 1845, the defendant failed in business, and that the heirs and devisees of *Christian Garber*, deceased, claimed a considerable debt of the defendant—Mrs. *Forbes*, the plaintiff's testator being one of said devisees. Witness had been acting as agent, and, in some instances, as an attorney for defendant, and after his effects had been sold by the sheriff, a movement was got up by some of the heirs of *C. Garber*, deceased, and by the defendant, to obtain a full release and discharge of defendant from all the debts which he owed them as heirs of *C. Garber*, deceased. Some of them had signed the release. Mrs. *Forbes* who was entitled to one-sixth of the whole, under the will, refused to sign without some new or fresh obligation by the defendant to pay her. This delayed the

matter some time, as the rest were to get nothing for so doing.

Finally, *William McFarland*, who acted for Mrs. *Forbes* in the matter, told witness that 700 dollars would be her share of the debt if he paid it all. Witness suggested that he had better modify the amount a little. Something was said about 500 dollars, for which amount defendant subsequently agreed to give her an obligation. This was finally agreed upon, and it was also, at the same time, agreed that the rest of the heirs of *C. Garber*, deceased, were not to know anything of this arrangement. Mrs. *Forbes* refused to sign the release until she got the bond, when she signed it, and so far as witness knows, she did not tell any of the rest what she got for signing the release. The bond sued on was given to get the release signed by Mrs. *Forbes*.

It is admitted by counsel for the appellants, that if the paper in question called a release, the execution of which being the consideration of the bond in suit, be a composition deed, the bond in suit is void, as being a fraud upon the other parties to the release. In the case of *Kahn* v. *Gumberts*, 9 Ind. R. 430, involving a similar question, the Court say that, "In transactions between a debtor and his creditors which result in a deed of composition, the utmost good faith is required. The debtor professes to deal upon equal terms with all the creditors who enter into the settlement, and they are supposed to stand in the same situation. This, then, being the principle upon which the compromise rests, it would seem to follow that the debtor, when he induces one creditor to assent to the arrangement by giving him a secret preference over the other creditors, is guilty of a fraud in obtaining the composition deed; because it must be presumed that such other creditors, had they known of such secret preference, would not have assented to the composition."

The case of *Kahn* v. *Gumberts, supra*, differs from the present in this, that in that case the question was whether the *composition* was void, and whether a creditor having executed it in good faith, without any knowledge that a secret preference had been given to another creditor, could

recover on his original claim, and set up the fraud in avoid- <span>May Term,</span>
ance of the composition,—the Court holding that he could. <span>1858.</span>
The question here is, whether the original debtor can set <span>McFarland</span>
up the fraud in avoidance of the bond given to secure the <span>v.</span>
secret preference. <span>Garber.</span>

The Courts are so careful to preserve the highest degree
of good faith among creditors, that the debtor himself, on
grounds of public policy, is allowed to set up this defense
against his own agreement.    Upon this point the authori-
ties are numerous.    *Cockshott* v. *Bennett*, 2 Durnf. & East,
763.—*Leicester et al.* v. *Rose*, 4 East, 372.—*Case* v. *Ger-
rish*, 15 Pick. 49.—*Stuart & Brother* v. *Blum & Simson*, 4
Penn. State R. 225.    The case last cited is, perhaps, pecu-
liarly applicable, as being decided in the state where the
release and bond in suit were executed.    The Court say in
this case that—"The Court [below] also ruled that the
agreement of *Blum & Simson*, of even date with the gene-
ral release, was void in the hands of the plaintiffs, on the
ground that, being parties to the composition agreement,
it was not competent for them to take from their debtors a
secret agreement for more than their fellow creditors were
to receive.    This doctrine is agreeable to those principles
of open and fair dealing which should characterize all mer-
cantile transactions, and is sustained by the authorities
cited," &c.

Without undertaking to determine whether the release
in question is strictly a composition deed, in the ordinary
legal acceptation of that term, we should examine the sub-
stance and effect of it.    It may be stated, as a general pro-
position, that good faith is required in every arrangement
or settlement made by an embarrassed debtor, on the one
side, and a community of creditors on the other, whether
the arrangement amount strictly to a composition or other-
wise.    In *Leicester* v. *Rose*, *supra*, a trust deed was exe-
cuted by the creditors, whereby they agreed to accept pay-
ment of their whole debts by certain installments, the first
four of which were to be guarantied by collateral security,
and the last two to remain upon the single security of the
insolvent.

May Term,
1858.

McFarland
v.
Garber.

Some of the creditors stipulated with the debtor privately, as the condition upon which they would sign the deed, that he should give them collateral security for the last two installments, as well as the others. Here was no compounding, nor indeed was there any agreement, that one creditor should receive more than another. They were all to receive their entire debts, but some were to receive an additional security not contemplated by the trust deed, and the stipulation for such additional security was held void, as a fraud upon the other creditors. *Le Blanc*, J., remarks upon the case as follows: "This case only differs thus far from the others, that this is not a deed of composition, in the common acceptation of the term, because it provides that every creditor shall ultimately receive his full demand; it is more like a letter of license. But it is clear upon the face of it, that the creditors at large were not satisfied with the personal security of their debtors, for they required collateral security for a part of their demands. Such being the agreement, whether entered into at a meeting of all the creditors assembled for the express purpose, or impliedly by their affixing their signatures to the same deed carried around to each separately, and signed by all; is it not a fraud upon the creditors at large, if the plaintiffs, having holden out to them that they would come in under the general agreement, have, notwithstanding, stipulated for a further partial benefit to themselves? And there is no difference, in substance, whether a creditor stipulate for what he thinks will produce him money more certainly, or for a larger sum of money than he had agreed to take in common with the other creditors; it is equally a fraud upon the other creditors to stipulate for either."

The effect of the release in question is a relinquishment of all claims of the description named in the release which the creditors hold against the debtor, except what they could make out of the property then held by him. This might amount to a composition—a receiving of part for the whole—or the creditors might fail to make anything out of the property; or they might realize their entire claims; but this can make no difference in respect to the principles of

law which should govern the case. The bond sued on was to secure Mrs. *Forbes* 500 dollars more than the other creditors were to receive. This bond, we must infer from the evidence, was entered into secretly, and without the knowledge of the other creditors. The witness, *Kemp*, testifies that at the time the bond and the execution of the release by Mrs. *Forbes* were agreed upon, it were also agreed that the other creditors of *C. Garber* were not to know anything about it.

On the whole, we are of opinion that the bond in suit is void, and that the defendant can avail himself of the defense.

It is suggested by counsel for appellants, that, inasmuch as Mrs. *Forbes* was the last to sign the release, the others could not have been influenced by her action in that respect, and that, therefore, no fraud was practiced upon them which would avoid the transaction. But the authorities are the other way. In *Knight* v. *Hunt*, 15 Eng. Com. Law Rep. 488, this point was directly made. The party securing an advantage in the case, was the last to sign the composition, and the agreement securing him a preference was held void.

It is argued that if the release have the effect of a composition deed to be signed by all the devisees of *Christian Garber*, deceased, it was not valid as to those who did sign, until signed by all; and those who had signed not being bound, and Mrs. *Forbes* knowing that fact, she had a right to negotiate for herself independently of the others, and make the best compromise for herself that she could. In support of the position that the release is not operative as to any until it is signed by all, the case of *Reay* v. *Richardson*, 2 C. M. & R. 422, is cited. Without determining whether this position is correct or not, it may be remarked that if so, it could not benefit the appellants. If the position be correct, the release is still inoperative and void, not having been executed by Mrs. *Rutter*, one of the legatees, and the bond in suit would appear to have been given without consideration, a defense set up in the answer.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Sullivan,* for the appellants (1).

*W. M. Dunn, J. W. Hendricks* and *T. T. Crittenden,* for the appellee.

(1) Mr. *Sullivan* cited *Cockshott* v. *Bennett,* 2 T. R. 763; *Leicester* v. *Rose,* 4 East, 372; *Feise* v. *Randall,* 6 T. R. 146; *Reay* v. *Richardson,* 2 C. M. & R 422.

(2) Counsel for the appellee cited *Steinman* v. *Magnus,* 11 East, 390; *Cockshott* v. *Bennett,* 2 T. R. 763; *Leicester* v. *Rose,* 4 East, 372; *Lewis* v. *Jones,* 4 B. & C. 506; *Horton.* v. *Riley,* 11 M. & W. 492; *Howden* v. *Haigh,* 11 Ad. & El. 1033; *Patterson* v. *Boehm,* 4 Penn. State R. 507; *Mann* v. *Darlington,* 3 Har. or 15 Penn. State R.; *Knight* v. *Hunt,* 5 Bing. 432; Chit. on Cont. 659; *Holmes* v. *Love,* 3 B. & C. 242; *Wells* v. *Greenhill,* 5 B. & A. 869.