## No. 8737.

## HAZELETT v. BUTLER UNIVERSITY.

CONSTITUTIONAL LAW.— *University.* — *Change of Name.* — *Corporation.*—The act of March 9th, 1875, Acts 1875, p. 166, providing that any university or college organized and incorporated under the provisions of any special charter, etc., may, by a majority of its board of directors, change the name, if done before the 1st day of July, 1879, is not unconstitutional. It is not local; it does not amend the charter nor create a new corporation.

SAME.—*Complaint. –Allegation of Change of Name.*—In a suit by a university which had changed its name under such act, it is sufficient, in alleging the change, to aver that it was made by a vote of the directors within the time limited, without stating the names of the directors, the number of votes cast, etc.

BUTLER UNIVERSITY.—*Subscription.*—*Bond.*—*Consideration.*—Where a subscription was made to the endowment fund of the Northwestern Christian University, and a bond given for the unpaid portion thereof, the amount secured by the bond is regarded as a loan, and the failure of the university to pay six per cent. interest upon such subscription in tuition does not show that the consideration of such bond has failed, nor does it constitute a defence to an action upon the bond; nor does the refusal of the university to issue stock for the subscription constitute any defence.

PRACTICE.—*Demurrer.*—*Answer.*—No available error is committed in sustaining a demurrer to a good paragraph of answer, where a paragraph alleging the same facts remains on file.

SAME.—*Supreme Court.*—*Evidence.*—*Instruction.*—In the absence of the evidence and instructions, no question depending upon them arises in the Supreme Court.

TENDER.—In order to keep a tender good the money must be brought into court.

From the Putnam Circuit Court.

*G. C. Moore* and *M. A. Moore,* for appellant.

*J. Birch, G. Hathaway, J. M. Judah* and *A. S. Caldwell,* for appellee.

BEST, C.—This action was brought by the appellee against the appellant upon a bond executed by him and one S. H. Bryan as his surety, on the 4th day of June, 1857, payable to the Northwestern Christian University.

The complaint alleged in substance that the Northwestern Christian University was incorporated under a special charter granted by the General Assembly of this State, and that, prior to the 1st day of July, 1879, it changed its name to Butler University, by a vote of a majority of the board of directors, which board consisted of eleven members, and that said change was made in pursuance of an act of the Legislature of this State approved March 9th, 1875 ; that appellant and his surety had, on the 4th day of June, 1857, executed to the appellee the bond described, whereby they obligated themselves to pay the appellee interest annually, in advance, at the rate of six per cent. per annum, upon $66.67, commencing on the 1st day of May, 1861, and that if default should be made in the payment of the interest, the principal sum should at once become due; that no interest had been paid and the whole sum was due and unpaid.

The bond accompanying the complaint recited the fact that the appellant had subscribed for one share of the capital stock of the Northwestern Christian University, held by him under original certificate of stock No. —, and that $66.67, two-thirds of his subscription to the endowment fund of the University, was retained by him as a loan.

A demurrer for the want of facts was overruled to the complaint, and an answer of eight paragraphs was filed. A demurrer was sustained to the second, fourth and fifth paragraphs and a reply was filed to the first, third and sixth. The seventh was a general denial. The issues thus formed were tried by a jury, and a general verdict, with answers to interrogatories, was returned for the appellee. Over a motion for a new trial and a motion for judgment upon the answers of the jury to the interrogatories, notwithstanding the general verdict, judgment was rendered for the appellee.

The appellant assigns as error the orders of the court in overruling the demurrer to the complaint, in sustaining the demurrer to the second, fourth and fifth paragraphs of the answer, in overruling the motion for a new trial, and in re-

fusing to render judgment upon the answers of the jury to the interrogatories.

These several assignments of error will be considered in the order of their statement.

The appellant insists that the act of March 9th, 1875, in pursuance of which the appellee changed its name, is unconstitutional, and for that reason the complaint was insufficient.

That act provides that "Any university or college organized and incorporated under the provisions of any special charter granted by the General Assembly of this State, may, by a vote of a majority of its board of directors, * * * change the name thereof: *Provided*, That such change shall be made before the 1st day of July, 1879."

The first objection urged to this act is that it contravenes the 22d section of the 4th article of the constitution, which provides that the General Assembly shall not pass local or special laws changing the names of persons. No authority is cited in support of this proposition, and we know of none. The act is general, and operates alike and uniformly throughout the State upon like facts. It is, therefore, neither local nor special. *Hymes* v. *Aydelott*, 26 Ind. 431; *State, ex rel.,* v. *Reitz*, 62 Ind. 159.

The fact that the act limits the time within which such institutions of learning may change their names does not affect its validity. *Clare* v. *State,* 68 Ind. 17.

It is insisted that the act in question amends the appellee's charter, and as the charter as amended is not set out the act is void. The act does not purport to nor does it amend the charter, but simply authorizes a change of name. There is nothing, we think, in this objection.

It is also insisted that the act creates a new corporation, with all the powers of the old, and, therefore, is in violation of the 13th section of the 11th article of the constitution.

What we have said already as to the effect and scope of the act disposes of this objection.

Finally it is insisted that the facts alleged are not sufficient.

to show a change of name, as it is not averred who were the directors, how many voted for the change, in what manner the order was made, and whether made at a regular or special meeting. We do not think such particularity is necessary. An averment that the change was made by a vote of a majority of the board of directors, within the time limited, was sufficient. The demurrer to the complaint was, therefore, properly overruled.

The first paragraph of the answer, which remained on file, alleged substantially the same facts in defence of the action as were alleged in the second paragraph of the answer. The ruling of the court in sustaining the demurrer to the second paragraph was, therefore, harmless if erroneous, as all the facts averred in it were admissible under the first paragraph. There is, therefore, no available error in this ruling.

The fourth and fifth paragraphs of the answer alleged facts which the appellant insists shows a total failure of the consideration of the bond sued upon. These paragraphs are very long and need not be fully copied in this opinion. The substance of the fourth is that the appellant subscribed for one share of the capital stock of the Northwestern Christian University; and at the time paid $17.50, made a note for an equal amount and executed the bond sued upon for the residue and for no other or different consideration; that at the time he had sons and daughters between the ages of five and sixteen years of age, and that his object in making the subscription was to make provision for the education of his children; that, after interest had accrued upon the bond, he elected to pay the principal sum, called upon the treasurer of the appellee and offered to pay the principal and accrued interest; that the appellee claimed to conduct an excellent school for young persons of both sexes, and that appellant then offered to place his daughter, who was then with him, as a pupil in said school, and pay all charges for tuition over and above six per cent. interest upon one share of stock, but that the appellee refused to receive said money or to allow

the appellant's daughter to enter said school; that since that time the appellant's children have attained their majority and are now settled in life, and that, by reason of the refusal of the appellee to accord to the appellant the privileges of a stockholder, the consideration of such bond has wholly failed.

The above paragraph is not good as a plea of tender before suit brought, and is not so regarded by the appellant. He insists that the facts averred show that he was entitled to the privileges of a stockholder in the university, and that its refusal to accord to him these privileges shows that the consideration of his bond has wholly failed. This paragraph is in confession and avoidance, and must be construed in connection with the facts averred in the complaint, recited in the bond, and in the light of the law which authorized the subscription and fixed the rights and liabilities of the subscribers to the endowment fund of the Northwestern Christian University. The bond recites that the appellant has subscribed for one share of stock of said university, which, by law, was $100; and that he has retained $66.67 as a loan, for which the bond was executed. The act of January 15th, 1850, which authorized the incorporation of the appellee, fixed its capital stock at not less than $75,000 nor more than $500,000, and fixed its shares at $100 each, for which any person was authorized to subscribe. It further provided that after $75,000 should be subscribed the subscribers should be incorporated as the Northwestern Christian University; that directors should be chosen, and that the board of directors were empowered to expend any amount which might be necessary, not exceeding one-third of the capital stock, to purchase a site, erect buildings and to procure proper fixtures, apparatus, furniture, library, etc., for the use of said institution, "the balance of said capital stock not so expended and applied shall be kept and retained as a permanent fund for the endowment of the said institution, and may be loaned out by said board, upon good and ample security."

The seventh section provides that "for so much and such

share and proportion of each subscription, as by the foregoing section is contemplated to be kept and retained as a permanent fund for the endowment of said institution, each shareholder shall be a preferred borrower, and shall, if he desire it, have the privilege of retaining the same as a loan from said company, upon full and prompt compliance with the terms of this act, prescribed to the borrowers of said fund, and subject to the same conditions and liabilities as other borrowers."

The fifteenth section of the act provides that "From and after the opening of the institution, each stockholder whose stock is fully paid or secured as herein contemplated, shall receive interest at the rate of six per cent. per annum on the amount of his or her stock, payable, however, solely and exclusively in tuition in said·institution, at the usual rates for tuition therein, when demanded, and payable to such stockholder, his or her order or assigns, at any time within ten years after such interest shall accrue."

This section conferred the rights and privileges of which the appellant alleged he was deprived, and the deprivation of which, he insists, works a total failure of the consideration of his bond.  These rights and privileges were not to be enjoyed until "from and after the opening of the institution," and it will be observed that it is not averred that the institution had been opened when appellant demanded the admission of his daughter, but the averment is that the appellee "claimed to conduct an excellent school."  This was not equivalent to an averment that the institution had been opened.  There is, however, another and a more radical objection to the paragraph in question.  By the terms of the charter the appellant, as soon as he subscribed and paid or secured his subscription, became a stockholder in the corporation, entitled to all the rights and privileges of one, among which was the right to interest upon his stock at six per cent. in tuition after the opening of the institution.  This was one of his rights as a stockholder, but not the only one, nor can we say the more important or valuable one.  The averment

in this paragraph of the answer, that the right to interest upon his stock in tuition was the sole consideration of the bond, must be controlled by the admitted fact that the subscription was made for the benefit of the endowment fund of the institution, and that the bond was executed in consideration of a loan of so much of that fund as he was entitled to borrow. Again, the appellee's charter, which binds the appellant, treats a secured subscription as paid-up stock and confers upon such subscriber all the rights and privileges of a paid-up stockholder. It treats the money retained as a loan precisely as though the money had been paid and then loaned, and holds all borrowers alike liable, whether a part of the paid-in capital is borrowed or a part of the subscription retained. It is clear that if the subscription had been paid and the money borrowed, though it was the same money paid, a failure or refusal to pay interest upon the stock in tuition would neither show a failure of consideration nor constitute a defence to the action. The most that can be claimed as shown is a breach of the appellee's duty to furnish the interest in tuition. This, however, is not enough, as it neither shows a failure of consideration nor a defence to the action. The paragraph was insufficient and the demurrer properly sustained.

The substance of the fifth paragraph of the answer is that the bond was executed in consideration of one certificate of stock in the Northwestern Christian University, and that said University, before the commencement of this suit, upon demand, refused to issue said certificate.

This paragraph was insufficient for the same reasons given why the failure to furnish tuition constituted no defence to the action. The failure or refusal of a corporation to issue certificates of stock to a stockholder constitutes no defence to an action by the corporation against the stockholder for borrowed money. The demurrer was also properly sustained to this paragraph of the answer.

All the questions embraced in the motion for a new trial arise upon instructions or depend upon the evidence, and as

neither the instructions nor the evidence are in the record, the ruling upon the motion presents no question.

The remaining assignment is that the court erred in refusing to render judgment for appellant upon the special findings of the jury. The jury found, in answer to interrogatories, that the appellant had offered to pay the appellee, in 1863, the full amount then due; that the offer was refused; that, on the trial, the appellant tendered appellee $80; that the appellee, on the trial, refused to receive the amount due at the time the appellant was at the office of the appellee's treasurer, and that no money was ever brought into court for the appellee.

This ruling was clearly right. The tender made was not followed up by bringing the money into court for the appellee, as should have been done. *Clark* v. *Mullenix,* 11 Ind. 532; *Sowle* v. *Holdridge,* 25 Ind. 119.

This was necessary so that the appellee could take the money. If the motion had prevailed the appellant would have succeeded upon this issue without, in fact, having paid anything, and the appellee would have been defeated by a plea which confesses that the amount tendered is due. This result the law will not tolerate. The motion was properly overruled.

This disposes of all the questions raised, and, as there is no error in the record, the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things affirmed, at the appellant's costs.