No. 893.

## SHINKLE ET AL. *v.* SHEARMAN ET AL.

DEBTOR AND CREDITOR.—*Contract.*—*Composition Agreement.*—*Essential Elements.*—*When Nullified.*—*Accord and Satisfaction.*—Every composition, to be complete, must have in it the element of accord and satisfaction, and a composition agreement must have the further element of agreement between the creditors who are parties thereto. In such agreements the law requires the utmost good faith on the part of the debtor toward all his creditors, and on the part of the creditors toward each other. If any creditor secure a secret preference, an element is introduced into the contract to which the other creditors have not assented, and it is no longer their agreement, and, when such discovery is made, they may treat the composition as null and void, and the debtor may even set up such preference to defeat his own agreement.

SAME.—*Composition Agreement.*—*Alleged Breach.*—*Suit on Original Indebtedness.*—*Recovery.*—Where certain creditors who are parties to a composition agreement bring suit on the original indebtedness, alleging that the composition agreement has been rendered void by a secret preference, the defendants should not be permitted to go out of court without having paid or performed the composition agreement, when due, where such agreement has been permitted to defeat a recovery on the original indebtedness.

From the Marion Superior Court.

*A. Baker* and *E. Daniels*, for appellants.

*H. L. Ritter* and *E. Ritter*, for appellees.

LOTZ, J.—The appellants sued the appellees, declaring on several promissory notes. One note was for the sum of $1,399.12. There were eight other notes for the sum of $103.36 each, and one note for the sum of $103.37.

The appellees answered the complaint jointly and severally. The first and second paragraphs alleged payment, and the third alleged that after the execution of the notes the appellees made an assignment under the laws of the State of Indiana, for the benefit of their creditors; that after such assignment they made a proposition to

their creditors for a composition; that such proposition was accepted by appellants and their other creditors; that their assignee was thereupon discharged by the court, and such proceedings were discontinued; that they have fully complied with such composition agreement on their part, and have offered to pay appellants the amount due them by the terms of said composition agreement, but that appellants refuse to accept such offer.

The appellants replied (1) the general denial, and (2) specially to the third paragraph, admitting the assignment for the benefit of creditors and the signing on their part of the composition agreement, but charge that at the time the composition agreement was signed appellees agreed, in writing, and as a part thereof, that the signing of such composition should not invalidate the pledge of certain merchandise held by appellants for the security of their claims; that appellees have failed to comply with such composition agreement, and that appellants are entitled to treat it as rescinded, and recover on their notes.

No question is raised as to the sufficiency of any of the pleadings, and we have deemed it unnecessary to give but the substance thereof.

There was a trial by jury, and at the conclusion of the hearing of the evidence the appellants dismissed the first paragraph of their complaint. The court then, of its own motion, instructed the jury as follows: "The evidence in the cause establishes the defense set up in the third paragraph of defendants' answer. You will therefore find for the defendants."

A verdict was returned in accordance with such instruction, and final judgment in favor of appellees followed.

The only assignment of error is the overruling of the motion for a new trial.

It appears, from the evidence, that in the year of 1884, the appellants were wholesale grocers, engaged in that business in the city of Cincinnati, Ohio, by the firm name of Shinkle & Kreis.  At that time, there was, in said city, a firm known as Shearman Bros., composed of John D. and Joseph T. Shearman, engaged in the business of manufacturing and selling mince-meat, fruit butters and preserves.  Shearman Bros. became indebted to Shinkle & Kreis in two separate amounts, for which said firm executed its promissory notes.  The first note was for the sum of $1,399.12, dated January 10, 1884, and due on or before July 10, 1886, with interest at six per cent. from July 10, 1885.  The second note was for the sum of $1,360.27, dated December 30, 1884, and due on or before January 10, 1886, with interest of six per cent. from January 10, 1885.  Shearman Bros. pledged to Shinkle & Kreis certain mince-meat stock in barrels.  Whether or not such pledge was given to secure the payment of both notes or only the last named, the evidence is conflicting.  The firm of Shearman Bros. was dissolved in the latter part of the year of 1885, and the firm of Adams & Shearman was formed.  This last named firm was composed of the appellees Henry G. Adams, James C. Adams and John D. Shearman.  The firm did business in the city of Indianapolis, as manufacturers of fruit preserves, butters, mince-meats, etc.  With the consent of Shinkle & Kries, John D. Shearman removed the mince-meat stock, which had been pledged, to Indianapolis, and stored it in the cellar of Adams & Shearman, and it was placed among the assets of that firm, subject to the pledge.  By an arrangement entered into between Adams & Shearman and Shinkle & Kreis, Adams & Shearman became the sureties of Shearman Bros. on the note, $1,399.12.  Adams & Shearman also paid Shinkle

& Kreis $100 and executed thirteen notes, each for $103.36, except the last one of the series, which was for $103.37, all dated January 13, 1886, and payable to the order of Shinkle & Kreis, one of said notes falling due on the 13th of each month thereafter, until all became due. The said thirteen notes and the $100 cash paid, being equal to the note of $1,360.27 with the interest thereon. It was also agreed that Shinkle & Kreis should retain the note of $1,360.27, and should credit the $100 cash, and as the small notes should become due and were paid should make credits of such payments on said note of $1,360.27. It was further agreed that Shinkle & Kreis should retain the mince-meat stock as an additional security. The four notes first to fall due were paid, and $513.44 was credited on the $1,360.27 note. On May 21, 1886, the firm of Adams & Shearman made an assignment of all their property for the benefit of their creditors. Some of the unsecured creditors of said firm met, on the 3d day of June following, and adopted a resolution that they would accept twenty-five per cent. of their claims, by taking notes of Adams & Shearman, one-half due in eight months and one-half due in eighteen months, with six per cent. interest, and secured by chattel mortgage on certain machinery and tools. June 24, 1886, Shinkle & Kreis signed the composition agreement, and at the same time, and as a part thereof, Adams & Shearman signed an agreement, as follows:

"In order not to vitiate the collateral held by Shinkle & Kreis, we hereby agree that the signing of the compromise of Adams & Shearman by Shinkle & Kreis will in no way affect their ownership of collateral (held by us and belonging to them) of the 77 half barrels stock mince-meat; 17,248 lbs., at 9 cents, $1,522.32; and 20 quarter barrels, 2,880 lbs., at 9 cents, $259.20; total, $1,811.52, given by Shearman Bros. to secure amount due

them. We also further agree to use 350 pounds of the stock mince-meat each working day during the month of November, 1886, and agree to pay nine cents per pound for same, remitting them the amount in cash as fast as used, and also agree to use all the balance of the stock mince-meat at the same price, remitting as used, on or before December 1, 1887, which Shinkle & Kreis will apply upon amount due by Shearman Bros.''

Adams and Shearman executed a chattel mortgage, as agreed, and their assignee was discharged by the court. On the third day of June, 1886, when the composition agreement went into effect, there was a balance due Shinkle and Kreis, on the first note of Shearman Bros., of $1,352.14, and on the second note $952.11, and on both notes of $2,304.25.

A controversy arose between appellants and appellees as to the construction of the composition agreement, and of the agreement signed by Adams and Shearman. Appellants contended that the 25 per cent. should be calculated on the balance due them on both notes, and that the mince-meat stock was pledged to secure both of the Shearman Bros.' notes, while the appellees contended that the 25 per cent. should be calculated upon the balance due on the first note only, and that the mince-meat stock was pledged to secure the second note only, and that when that note should be paid, the remainder of the mince-meat stock, if any, should be the property of appellees free from said pledge.

On November 22, 1886, the appellees sent by mail to appellants two notes signed by Adams and Shearman, dated June 3d, 1886, each for the sum of $169.02, one due in eight and one in eighteen months with 6 per cent. interest, being twenty-five per cent. of the amount due on the first note. Shinkle and Kreis refused to accept these notes but returned them to appellees.

The appellees used of the mince meat stock under the agreement made on June 24th, 1886, and remitted to Shinkle and Kreis the sum of $787 on account thereof. If appellees' contention is correct, that the pledge was given to secure the last note only, then this sum, with the former payments, would entitle them to a credit thereon of $1,300.94, and there would still remain an unpaid balance thereon of $164.61, not counting the interest from June 3d, 1886.

At the time this action was commenced, February 17th, 1888, both of the notes which appellees sent to appellants by mail were past due. Appellees did not pay any money into court, nor did they bring their compromise notes into court with their pleading, nor did they on the trial keep good their tender either of notes or money, but simply introduced such notes in evidence.

We are informed, by appellants' brief, that the trial court was of the opinion that the collateral agreement above set out gave an improper preference to the appellants as against the other creditors of Adams and Shearman, and that the appellees had tendered sufficient performance under the composition agreement.

It will be conceded that if the debtor performs his part of a composition agreement no action will lie for the original debt. *Pontious* v. *Durflinger*, 59 Ind. 27.

But if he fails in good faith to perform his part, the creditor has his action upon the original debt. *Kahn* v. *Gumberts*, 9 Ind. 430.

The theory of the law in a composition contract is, that it is an agreement between the creditors themselves, as well as between them and the debtor. They agree that each shall receive the sum or security stipulated and nothing more, and it is on this consideration that the debtor shall be wholly discharged from all the debts owing the creditors, who signed the composition contract.

The law requires the utmost good faith on the part of the debtor toward all of his creditors, and on the part of the creditors toward each other.

If any creditor secure a secret preference, an element is introduced into the contract to which the other creditors have not assented, and it is no longer their agreement, and they may treat the composition as null and void whenever such discovery is made. So careful are the courts to preserve the highest degree of good faith among the creditors that the debtor himself may, on the grounds of public policy, set up the preference to defeat his own composition agreement. *Kahn* v. *Gumberts, supra; McFarland, Exec.,* v. *Garber,* 10 Ind. 151; *Evans* v. *Gallantine,* 57 Ind. 367 (371).

We fail to see how these rules can have any controlling effect on the case in hearing.

Even if it be conceded that the collateral contract is voidable by reason of a preference given the appellees, it was voluntarily performed in part, and to the extent of the performance, it is binding upon them. They are not entitled to have the moneys, so voluntarily paid, returned or credited upon the notes in suit.

The small notes which were given in lieu of the second note, and which are declared upon, have never been paid in full. The appellees will not be permitted to repudiate both the composition contract and the collateral contract. The part performance of one will not operate as a discharge of the other.

There is still another serious objection to the instruction of the court in directing a verdict for the appellees. It assumes that the composition agreement, as a defense, had been established as to the whole complaint remaining after the first paragraph was dismissed. The evidence entirely fails to support such defense. If the tender of the notes was a good tender in the first instance,

the appellees should have kept the tender good. When a tender is pleaded with a profert, the article must be in court not only with the pleading but upon the trial, so that the court may render a proper judgment protecting the right of all the parties litigant.

When a stipulation to be performed or a thing to be done rests upon one party to a contract, and is independent of any obligation resting upon the opposite party, the tender must not only be strictly made but must be kept good in order to effect a discharge of the contract. *Eichholtz* v. *Taylor*, 88 Ind. 38; *Smith* v. *Felton*, 85 Ind. 223; *Hazelett* v. *Butler University*, 84 Ind. 230.

Every composition, to be complete, must have in it the element of accord and satisfaction. An accord is the proper term for an agreement between a single creditor and the debtor for the discharge of the debt, by accepting something other than agreed upon, or by payment of a less sum. ' Accord and satisfaction is the proper term for such agreement, consummated by actual payment and acceptance in full. A composition is an engagement in which several of the creditors ( not necessarily all, but a number) agree with the debtor, and in effect with each other, that the debtor shall be released on making the partial payments he proffers. Abbot's Law Dict.

An accord without satisfaction is not good. Whart. Cont., section 999.

As a result of the judgment rendered below, we have this anomalous condition:

The appellees were permitted to go out of court without ever having paid or performed the composition agreement, although such agreement was permitted to defeat a recovery.

Judgment reversed, with instructions to sustain the motion for a new trial.

Filed Sept. 19, 1893.