11193

JEFFORDS v. TOKIO MARINE & FIRE INS. CO.

(117 S. E., 79)

1. INSURANCE—WHETHER PROVISION VITIATING POLICY IN CASE OF MORTGAGE WAIVED, HELD FOR JURY.—Where plaintiff testified that at the time the automobile was insured he informed insurer's agent that there was a mortgage on it, and this was denied by the agent, whether there was a waiver of a condition that the policy should be void if the subject-matter is or becomes incumbered by a mortgage *held* for the jury.

2. INSURANCE—INSURER ENTITLED TO ACT ON INSURED'S REPRESENTATIONS AS TO NONEXISTENCE OF MORTGAGE WITHOUT MAKING INDEPENDENT INVESTIGATION BY SEARCHING RECORD.—Where insured represented that there was no mortgage on the automobile covered by the policy and agreed that, if that representation was not true, the policy should be canceled, insurer was justified in acting on that statement without making any independent inquiry, such as by examining the records of mortgage, since actual notice, not merely constructive notice, is required for waiver.

3. INSURANCE—INSURER NOT PREJUDICED BY INSURED'S UNDERESTIMATING COST.—An insurer *held* not prejudiced by insured's underestimating the cost of the automobile and equipment insured.

Before MEMMINGER, J., Colleton, Spring Term, 1922. Reversed as to one action: Affirmed as to the other.

Two separate actions by W. G. Jeffords against the Tokio Marine & Fire Insurance Co., tried together. From a judgment for plaintiff in each action defendant appeals.

*Messrs. Howell & Fishburne* and *Lionel K. Legge,* for appellant, cite: *Charge on facts:* 15 S. C., 392; 28 S. C.,

255; 47 S. C., 513; 56 S. C., 524; 85 S. C., 282; 14 R. C. L., 742; 111 S. E., 88; 51 S. C., 461.. *Insurer may rely on warranties and agreements contained in the contract:* 14 R. C. L., 349; 18 Md., 26; 107 A. S. R., 108; 26 C. J., 296. *Constructive notice to insurer:* 107· A. S. R., 108. *Notice from record is to subsequent purchasers and encumbrances:* 1 Civ. Code 1912, Sec. 3542; Act 1914, p., 482. *Waiver:* 27 R. C. L., 904; 81 S. C., 152.

*Messrs. Padgett & Moorer,* for respondent, cite: *Waiver of foreiture:* 83 S. C., 15; 74 S. C., 249; 36 S. C., 273; 48 S. C., 195; 52 S. C., 224; 51 S. C., 181. *Duty of insurer to get information at hand:* 75 S. C., 320; 88 S. C., 37; 119 S. C., 1; 52 S. C., 231. *Courts will protect insured:* 115 S. C., 59.

April 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Two actions tried together upon two separate policies of fire insurance covering a Ford coupe and a Ford sedan. Verdict in each case for the plaintiff. The defendant appeals.

As there is a differentiating circumstance in one of the cases, they will be considered separately upon this appeal. First, the Ford coupe suit: On November 3, 1920, the defendant issued a policy insuring the plaintiff against loss or damage by fire, in an amount not exceeding $900, to his automobile described as a Ford coupe. The policy covered a period of one year, expiring on November 3, 1921. The car was totally destroyed by fire on September 7, 1921. On the following day the plaintiff gave due notice of the fire, and on September 16, 1921, submitted proofs of loss as required. In his proofs of loss the plaintiff stated:

| | | |
|---|---|---|
| The original cost of the car at ............................ | $1,035 | 00 |
| Less depreciation ..................................................... | 343 | 52 |
| | | |
| Present value ........................................................... | $  691 | 48 |
| Accessories ............................................................... | 219 | 50 |
| | | |
| Actual cash value at time of loss ....................... | $  910 | 98 |

It appeared beyond dispute that the accessories were placed upon the car at the time the plaintiff purchased it, and were upon it at the time the policy was issued. He claimed, accordingly, the full amount of the policy, $900. Among the warranties, *"statements of facts known to and warranted by the assured to be true,"* upon which *"this policy is issued by the company relying upon the truth thereof,"* is this statement:

The facts with respect to the purchase of the automobile described are as follows:  "Purchased by the assured September, 1920, new; actual cost to insurer including equipment $1,035.00."

The policy also contained a stipulation, as a condition, that it should be null and void, *"if the subject of this insurance be or become incumbered by a lien or mortgage except as otherwise indorsed hereon."*

It was conceded that, at the time of the issuing of the policy, there was a chattel mortgage upon the car executed and delivered by the plaintiff to one W. Z. Ayer on September 24, 1920, recorded September 29, 1920, to secure a note for $225 due December 1, 1920, the unpaid portion of the purchase price of the car.  The plaintiff testified that at and before the issuance of the policy he informed the agent who issued the policy of the existence of the mortgage.  This was denied by the agent.

The defendant denied all liability upon the policy upon the ground that the admitted existence of the chattel mortgage constituted a breach of the policy; and insisted that in

no event was it liable for the accessories itemized in proofs
of loss aggregating $219.50, or that they were entitled to
be considered in estimating the amount of the plaintiff's loss.

As to the effect of the existence of the chattel mortgage
the Circuit Judge properly charged the jury:

"If a mortgage was [had been?] given by the plaintiff at
the time he obtained the policy in question, or subsequent to
its issuance, and the said mortgage was unpaid at the time
the said policy was issued, that then, in the event and by
reason of the giving of the mortgage, the policy would be
deemed canceled and void by such act on the part of the de-
fendant [plaintiff] ; in other words, the giving of such an
incumbrance by the plaintiff is contrary to the provisions
of the policy of fire insurance issued to him, and vitiates it,
unless waived by the Insurance Company, and the question
of waiver is for you to decide."

And, in view of the positive testimony of the plaintiff
that he had notified the agent of the existence of the mort-
gage at the time the policy was issued, a fact denied by the
agent, the Circuit Judge was entirely right in submitting
this issue to the jury as determinative of the question of
waiver.

In view, however, of the sharp conflict of testimony
upon this point, it was reversible error to charge the
jury that, if the defendant, by the exercise of ordi-
nary care, could have discovered the existence of the mort-
gage, the waiver of that condition would as effectually be
established as if the plaintiff had informed the defendant
of it, and in suggesting to the jury certain channels of in-
quiry open to the defendant, particularly the record of the
mortgage in the clerk's office.

The nonexistence of a mortgage upon the car was a
statement of a fact by the plaintiff, a part of the conditions
in the policy and of the warranty upon which the company
acted issuing the policy. The plaintiff bound himself to
the truth of that statement, and agreed that, if it was not

true, the policy should be canceled.    There was no duty incumbent upon the defendant to do otherwise than act upon that statement; no duty arose to doubt it and verify it by any independent inquiry whatever.

In 14 R. C. L. 1172, it is said:

"In general it may be said that the knowledge of an insurer which will form the basis for a waiver must be *actual notice* either to the insurer or its authorized agents, and not mere *constructive notice.*    Accordingly a notice deposited in the mail is ineffective unless received and *the constructive notice imparted by the record of instruments is insufficient.*"

In a note to this text is cited *Mutual Fire Ins. Co. v. Deale,* 18 Md., 26, 79 Am. Dec., 673; ·monographic note 107 Am. St. Rep., 108.

To the same effect, see 26 C. J., 296, and numerous cases cited in the note.

Mr. Freeman in his monographic note exhaustively reviews this question in 107 Am. St. Rep., 108.    Under the head "Constructive Notice to Insurers," he says:

"The statutes providing for the registration in some public office of instruments affecting the title to real property usually, if not universally, provide that such registration shall impute notice of the contents of the writing so registered to subsequent purchasers and incumbrancers.    *Insurers are neither,* and hence are not, when issuing polices, chargeable with notice of such registered instruments, and may therefore seek and find protection in conditions in such policies exempting insurers from liability in case the condition of the title to the property insured has not been truly disclosed, or incumbrances existed which have not been noted on the policy, though the condition of such title or the existence of such incumbrances appears on the public records, and must have been disclosed had any examination been made thereof.    *Orient Ins. Co. v. Williamson,* 98 Ga., 464, 25 S. E., 560; *Shaffer v. Milwaukee Mut. Ins. Co.,*

31—S. C.—123

17 Ind. App., 204, 46 N. E., 557; *Phœnix Ins. Co. v. Overman,* 21 Ind. App., 516, 52 N. E., 771; *Milwaukee M. Ins. Co. v. Niewedde,* 12 Ind. App., 145, 39 N. E., 757; *Wicke v. Iowa State Ins. Co.,* 90 Iowa, 4, 57 N. W., 632; *Mutual Fire Ins. Co. v. Deale,* 18 Md., 26, 79 Am. Dec.. 673; *Ætna Ins. Co. v. Holcomb,* 89 Tex., 404, 34 S. W., 915; *U. S. Ins. Co. v. Moriarity* (Tex. Civ. App.) 36 S. W., 943."

See, also, the observations of the writer in his dissenting opinion in the case of *Gibbes v. Ins. Co.* (S. C.), 111 S. E., 805, 21 A. L. R., 1460, upon this subject, which do not conflict with the opinion of the Court.

As to the other contention of the defendant that they are not liable for the value of the accessories: I do not find that the defendant raised any such question upon the trial or requested the Circuit Judge to charge thereupon; and, even if it had, I cannot see that the defendant was prejudiced by the fact that the insured underestimated the actual cost of the car and equipment which included the accessories.

As to the Ford sedan case: It is precisely upon the same footing as the coupe case except that no question of a chattel mortgage is involved. The exceptions relating to that question not being applicable to the sedan case no valid objection appears to the judgment.

The exceptions involving criticisms of the Judge's charge apply only to the question of waiver which arises only in the coupe case, and, my opinion being that the judgment in that case should be reversed upon other grounds, it is not necessary for me to express an opinion about them.

The judgment of this Court is: (1) That the judgment in what has been designated as the Ford coupe case be reversed, and the case remanded to the Circuit Court for a new trial; (2) that the judgment in what has been designated as the Ford sedan case be affirmed.

MESSRS. JUSTICE FRASER and MARION concur.

MR. CHIEF JUSTICE GARY (dissenting) : The following statement appears in the record:

"The two above-entitled actions were commenced by the plaintiff against the defendant in the Court of Common Pleas for Colleton County on or about December 20, 1921, upon two policies of fire insurance issued to the plaintiff by the defendant of date November 3, 1920. One policy insured the plaintiff against loss or damage by fire to an amount not exceeding $900 upon his Ford coupe automobile. The other policy insured him against loss or damage by fire to an amount not exceeding $1,000 upon his Ford sedan automobile, subject in each case to the provisions, exclusions, conditions, and warranties incorporated in said policies. The policies covered a period of one year from the date of issuance. Both automobiles were totally destroyed by fire on September 7, 1921.

"Plaintiff paid the premium on each policy at the date of issuance, and immediately after the fire, to wit, on September 8, 1921, gave due notice thereof in writing to the defendant, as required by the policies.

"In each action judgment was demanded for the full amount named in each policy against the defendant by reason of said total loss, together with interest at the rate of 7 per cent. per annum from September 8, 1921.

"The answer of the defendant to the action on the insurance policy covering the Ford coupe automobile raises the following two issues:

"First, that the said policy did not insure the plaintiff against loss or damage by fire on any additional equipment, accessories, or other furnishings placed upon said coupe automobile by the plaintiff subsequent to its purchase; that said policy insured the said automobile only in the condition in which it left the factory as a completed product, and any additional equipment, accessories, or other furnishings placed thereon by the plaintiff subsequent to its purchase by

him were not covered by the said policy, and were not insured thereunder, and liability for such loss was denied.

"Second, that at the time the said policy was issued to the plaintiff there was in existence an unpaid chattel mortgage covering the said Ford coupe automobile, and constituting a lien thereover, given by the plaintiff to one W. Z. Ayer to secure the sum of $225, being the balance of the unpaid purchase money thereof, of all of which the defendant had no notice or knowledge until after the commencement of this action, which mortgage has never been paid; that the said policy is null and void, and was null and void from its date by reason of the said mortgage as above alleged, in that it violated that provision of the policy which provides, 'It is a condition of this policy that it shall be null and void * * * if the subject of this insurance be or become incumbered by any lien or mortgage except as otherwise indorsed hereon'; and that there is no indorsement on said policy negativing this provision. On this issue the defendant denied all liability on the policy.

"It is an admitted fact in the case that the defendant, on or about January 16, 1922, after the commencement of this action, made a sufficient tender of the sum of $9 to the plaintiff, being the premium paid by the plaintiff on the policy covering the Ford coupe automobile, and that the plaintiff refused to accept the said money which was tendered to him by the defendant. The tender was made on the ground that the existence of a chattel mortgage under the circumstances alleged in the answer of the defendant canceled and annulled the said policy.

"It is also an admitted fact in the case, testified to by the plaintiff, that there was and is an unpaid, valid chattel mortgage over the said Ford coupe automobile, given by the plaintiff to one W. Z. Ayer, as alleged in the answer of the defendant, of date September 24, 1920, and recorded September 29, 1920, in the office of the Clerk of Court for Colleton County, in Book 83 of Chattel Mortgages, at page

202, being in the amount of $225, such amount being the unpaid portion of the purchase price of the said Ford coupe automobile, the mortgage being given to secure the same. Under the terms of this mortgage the said amount was to be paid December 1, 1920. This mortgage constituted a valid lien over the Ford coupe, and was of force and effect at the time the policy of insurance covering said Ford coupe was issued by the defendant to the plaintiff.

"The plaintiff, W. G. Jeffords, testified that, while a chattel mortgage duly recorded for $225 of the purchase money was in existence over the Ford coupe at and before the issuance of the policy, he had informed R. L. Fraser, the agent who sold him the policy of insurance, of that fact before the delivery of the policy. This was denied by R. L. Fraser, a witness for the defendant. The plaintiff and his witnesses also testified that the value of the cars at the time of the fire was as much or more than the amount of insurance over them.

"The answer of the defendant to the action on the insurance policy covering the Ford sedan automobile raised the sole issue that the policy sued upon did not insure the plaintiff against loss or damage by fire on any additional equipment, accessories, or furnishings placed upon said automobile by the plaintiff subsequent to its purchase; such policy insuring the said automobile only in the condition in which it left the factory as a completed product. Liability was denied for any loss or damage by fire to such additional equipment, accessories, or furnishings.

"It will be noted that this issue is identical with the first issue raised in the action involving the Ford coupe automobile mentioned above.

"The two actions entitled above came on to be heard at the spring term of the Court of Common Pleas for Colleton County in 1922, and were tried by Judge R. W. Memminger and a jury.

"It was agreed that the two cases be tried together, and that the evidence offered be applied to either or both of the actions so far as applicable or relevant.

"The jury returned a verdict in favor of the plaintiff for $936.70 in the action involving the Ford coupe automobile, being the amount of the policy, with interest from the date of proof of loss; and in the action involving the Ford sedan the jury found a verdict for $1,040.80 in favor of the plaintiff, being the amount of the policy, with interest from the date of proof of loss. Judgment in each case was duly entered against the defendant.

"From the judgment in each case, and in due time, the defendant served notice of intention to appeal to the Supreme Court."

The exceptions are as follows:

"(1) Because his Honor erred in charging the jury as follows: 'The only principle that you have to bear in mind is this, the word known in insurance law as waiver. Now, I will try to explain that to you. When I first went on the bench years ago, when the insurance companies, going around the country, go in a little man's store and take a policy on his stuff, the fire would come, and then you go down and look in the policy, and you find there what is known as an iron-safe clause, that the company had agreed not to pay that man unless he kept an iron safe in his store and kept a regular set of books in that iron safe. Now, when the agent went in there, he knew that he did not have an iron safe and did not keep a regular set of books locked up in that iron safe, and yet still he issued the policy on the man's property, and, when the loss occurred, they would set up this clause as a defense to his cause of action. The Courts got on to that, gentlemen, and I will try to get your minds straight on that item'—the error being that such charge is a manifest violation of Section 26, Art. 5, of the Constitution of 1895, forbidding Judges from charging juries with respect to matters of fact, in that:

"(a) His Honor in using such illustration did not state it hypothetically, but the entire recital thereof was charged as statement of fact and conveyed to the jury his opinion that the defendant, like all other insurance companies, was guilty of nefarious practices, and had to be kept in check by the Courts.

"(b) That in using such a harsh illustration, with its positive statement of facts, his Honor inflamed the minds of the jury against the defendant, to its great prejudice, and conveyed to them his distrust of all insurance companies, and his opinion that the facts of the case at bar were similar and on the same footing with the facts used by him in his illustration, and were not worthy of belief.

"(c) Because his Honor forced upon the minds of the jury his opinion that the defendant, like insurance companies he referred to in the said illustration, knew at the time of the issuance of the two policies in question that there was a mortgage over the Ford coupe automobile, and that it knew, as to both coupe and sedan, that the additional equipment, accessories, and parts placed thereon by the plaintiff were to be deemed covered by the said policies, with the intention throughout to rely upon the forfeiture clause in the event of loss or damage by fire.

"(2) Because his Honor erred in charging the jury as follows: 'Waiver is commonly known as a relinquishment of another's rights, and if the jury is satisfied that that agent, when he issued that policy, knew or could have known by the exercise of ordinary care, reasonable and ordinary care, they knew that the party did not have any iron safe or did not have any regular set of books locked up in the iron safe, then he was said to have waived, to have waived that requirement of the right, and he could recover on the policy as well as if there had been no clause in it'—such charge being an incorrect statement of the law of waiver, the error being that the relation between the plaintiff and the defendant was a contractual one, governed and controlled entirely by the provi-

sions of the insurance policies, and the defendant company, as one of the parties to such contract, in the absence of actual knowledge or notice, does not have to exercise either reasonable or ordinary care in discovering violations of its provisions at the date of the issuance, or subsequent thereto, but may rely upon the truth of the warranties and agreements therein contained.

"(3) Because his Honor erred in charging the jury as follows: 'It being for the jury to say whether the facts and circumstances have satisfied them that there had been a waiver, and did not intend to rely upon the clause, when the loss come, he was simply going to sit behind and knowing it, and should have known it, and then he is said to have waived that requirement. Now, that idea goes through the whole of all these insurance policies, having these clauses and limitations and so forth in them, just as the mortgage clause as stated in this case'—the error being that such charge was in violation of Section 26, Art. 5, of the Constitution of 1895, in that his Honor clearly and forcibly intimated to the jury his opinion of the force and effect of the testimony in the case at bar, viz.: that the defendant knew and should have known of the violations of the policy provisions which would make the forfeiture clause operative as to the mortgage, yet sat crouching behind the forfeiture clause as though with a club, waiting to claim the benefit of such clause in the event of loss or damage by fire, all of which seriously damaged and prejudiced the defendant before the jury.

"(4) Because his Honor erred in charging the jury as follows: 'Now, then, upon that, did the company, or its agent, the company, that is, its agent, did the agent representing the company, did they have reasonable means of knowing, by the exercise of ordinary care, could have discovered, or did they actually know, Mr. Jeffords had a mortgage on the car when the policy was issued'—the error being that:

"(a) The relation between the plaintiff and the defendant was a contractual one, governed and controlled entirely by

the provisions of the insurance policies in question, and the defendant insurance company, as one of the parties to such contract, in the absence of actual knowledge or notice, does not have to exercise ordinary or reasonable care or pursue 'reasonable means of knowing' in the discovery of violations of the policy contract, but may rely upon the truth of the warranties and agreements contained in said contract.

"(b) Because such charge is in direct conflict with, and in violation of, Section 20, Art. 5, of the Constitution of 1895, in that his Honor charged upon the facts when he charged the jury that they (the defendant and its agents) 'could have discovered that (the mortgage) by the exercise of ordinary care, by asking Mr. Jeffords, or by looking in the courthouse, or whatever you might decide in the matter,' thereby indicating to the jury his opinion of the force and effect of the evidence, to the prejudice of the defendant.

"(5) Because his Honor erred in charging the jury as follows: 'That's a question, thereon this question of waiver. It don't do to let them go on taking a man's money absolutely knowing they got some defense which they can rely on in case of loss or fire, and keep on taking his money and well knowing of the facts, knowing that some clause in the policy had been violated'—the error being that such charge was in direct violation of Section 26, Art. 5, of the Constitution of 1895, which forbids Judges to charge upon the facts, in that it was an exhortation to the jury to find a verdict in this case against the defendant, and indicated to the jury in words that they could not fail to understand his Honor's view of the force and effect of the evidence in this case.

"(6) Because his Honor erred in charging the jury as follows: 'The whole idea is, if the actual value of these cars when the fire, when they were burned, was as much or more than the policies in question, and they agreed to pay them up to a certain amount in the policies, or as much or more than the amount named in the policies, then certainly

the amount named, or should get the whole amount of the policies and interest thereon from the time the fire occurred, and the company having refused to pay, at the rate of 7 per cent. per annum.   So that's a general proposition, of course, taking in consideration all these matters that are claimed as to the care, the value of the cars when they left the factory, and the value of the cars when they had certain equipment attached to them.   That is for you, gentlemen, to say from all the facts and circumstances proved.   So there you are, gentlemen, as far as I can go.   I charge you these points'— the error being that it was the duty of the Judge to construe the said policies of insurance, and instead of said charge, to have charged the jury that under the provisions of said policies no recovery could be had against the defendant in either case, coupe or sedan, for loss or damage by fire to any additional accessories or equipment placed on said cars by the plaintiff.

"(7)  Because his Honor erred in permitting the witness W. G. Jeffords to testify, over the objection of the defendant, to the additional equipment and accessories placed upon said cars by him, the error being that it was contrary to the terms and provisions of the said policies, and constituted an attempt to change the terms of the said written contracts by oral testimony."

## OPINION

We have italicized so much of the record herein as states the issues raised by the pleadings.   The record shows that the following took place during the examination of W. G. Jeffords, the plaintiff, as a witness:

"Q.  Did you furnish any equipment on these cars?

"Mr. Fishburne:   We object to any testimony going to show any extra equipment or accessories placed upon the automobile.   The reading of the policy will show that (reads policy to the Court).   Now, the witness has testified what the cars cost him and the policy it is provided, which he accepted that actual cost insurance or equipment

$1,135. They do not allege in the complaint in the first place that any additional accessories were added to this machine, upon the sedan automobile, just exactly as the contract or insurance provides, and does not include any additional cost when delivered to him or the cars that were insured by the company that was insured, and that's what it was covering, and may it please your Honor by reading of this statute your Honor you will notice that the company is liable for the actual cost value of the automobile at the time of the fire. Now, your Honor, if they are insured, he buys an automobile, three or four or five hundred dollars. So that Mr. Jeffords' cars were burned the actual cost was $1,135. If he can add to $1,135 several hundred dollars by way of extra equipment which was not covered in the policy, why, then, he might make the company pay that much more for which he had not paid the company. We object, in the first place, not alleged in the complaint. In the second place, the policy was issued to him and he paid only $10 insurance on the car that he bought. (After argument for and against the motion the Court ruled as follows) :

"The Court: The evidence is admissible as far as the insurance agent knew he put on this extra equipment, or of course you can show the insurance company did not know that he had put that on the cars; that would be as to the question of waiver whether they knew it or not. The question has been asked: How can you show the question of waiver? I think the evidence is certainly admissible. The insurance agent knew well that these outfits had been put on the car and went on and took the man's money. Go ahead and take the testimony. (Objection noted by the stenographer.)

"Subject to this objection the plaintiff then testified that the value of the equipment placed on the Ford sedan was $295 and on the Ford coupe $219.50; that this was in addition to the $1,135 paid for the sedan and the $1,035 paid

for the coupe; that this equipment was placed on the cars at the time of purchasing them and before they left the dealers, and was on the cars at the time the insurance was taken out.

"R. L. Fraser, who was the insurance agent who sold and delivered the policies, denied that the plaintiff had notified him prior to delivery of the policy that there was a mortgage over the Ford coupe. The defendant offered no oral testimony as to the value of the cars at the time of the fire."

The plaintiff's testimony tended to show that no additional equipments were placed on either the Ford coupe or Ford sedan automobile subsequent to their purchase by the plaintiff. It also tended to show that the defendant had notice of the mortgage in question prior to the time of issuing the policies of insurance. In *Huestess v. Insurance Co.*, 88 S. C., 37, 70 S. E., 406, the Court used this language:

"But, even if it be successfully contended, that the testimony failed to show he had such a disease as rendered him an unfit subject for life insurance, nevertheless it clearly tended to show that the agent was informed of such facts by the insured as were sufficient to put a reasonably prudent man on inquiry, which, if pursued with due diligence, would have led to the knowledge of the fact that the insured had Bright's disease, and this is the equivalent of actual notice. *McGee v. French,* 49 S. C., 454, 27 S. E., 487."

Applying the principles of the foregoing decisions to the said testimony, it is manifest that it was properly submitted to the jury.

None of the exceptions show prejudicial error, and they should be therefore overruled.