Smith *r*. Felton.

No. 9160.

SMITH *v.* FELTON.

85 223
143 619

PROMISSORY NOTES.—*Assignment.— Collateral Security.— Endorsement.*—An assignee of a promissory note who has re-assigned the note to his assignor, as collateral security, can not, while the latter so holds the note, maintain a suit on the endorsement. *Aliter*, after the debt secured is satisfied.

SAME.—*Duty of Holder of Collateral Security to Sue.*—One to whom a note is delivered as collateral security is not bound to sue thereon if he be certain that a suit would be fruitless.

TENDER.—To keep a tender good the money must be brought into court.

CONTRACT.—*Rescission.—Pleading.—Presumption.*—A general allegation in a pleading, that a contract had been rescinded, will be presumed to mean that the whole contract was annulled, and the parties reinstated in the situation occupied before the execution of the contract.

From the Montgomery Circuit Court.

*E. C. Snyder*, for appellant.

*G. W. Paul* and *J. E. Humphries*, for appellee.

ELLIOTT, J.—The first paragraph of the appellee's complaint alleges, that Simeon Krout and Mary H. Krout executed to the appellant their promissory note for $466; that it was by him endorsed to the appellee; that the note was void as to Mary H. Krout, for the reason that she was a married woman; that Simeon Krout died insolvent, in December, 1878; that the note, after its endorsement to appellee, was transferred and endorsed back to the appellant as collateral security for the payment of three promissory notes executed by the former to the latter; that these last mentioned notes were executed for the purchase-money of real estate; that the appellant refused to convey the real estate as agreed, and, to quote from the complaint, "The defendant has accepted the possession of said real estate in full satisfaction of all the notes executed by the plaintiff to defendant, including the notes for which the note sued on was given to secure, and plaintiff to pay $100 for damages and repairs of said premises, and plaintiff tendered the $100 to the defendant before the bringing of this suit."

It is contended by the appellee, that this paragraph entitles him to recover against the appellant upon the assignment, and that it shows the latter to be liable as an assignor. The appellant insists that the contract under which the note was pledged to him as collateral security vested title in him to the note and all its incidents, and, therefore, that appellant can not maintain an action against him as an assignor.

We are satisfied that the appellee can not maintain an action upon the assignment while appellant rightfully holds the note under the endorsement and contract which placed them in his hands as collateral security. By his endorsement of the note back to the appellant, the appellee divested himself of the title, and is not in a situation to sue the maker, much less his own assignee. It can not be possible that a man may transfer a note to another, and while the note is still rightfully held by the assignee sue him upon a contract of assignment anterior in time to that made by the party who brings the action.

It is true, that the paragraph under immediate mention does, in a vague way, allege that the notes for which the one in suit was endorsed to the appellant as collateral security have been partially satisfied, but it also shows that the appellee has not performed the agreement upon which rests his right to insist upon satisfaction. By his own affirmative showing, the agreement upon which his claim to have the original debt considered satisfied is founded, has not been performed. It is plain from what is stated, that he was bound to pay $100 before he could rightfully take from appellant the note deposited as collateral security. Where one has pledged notes as collateral security, he has no right to them without showing that he has performed the engagement which they were pledged to secure.

If the tender alleged in the complaint had been kept good by bringing the money into court, the appellee might, perhaps, have successfully asserted his right to the note which he had endorsed to appellant as a collateral security. It is an old and familiar rule, that, in order to make good a tender,

Smith v. Felton.

the money must be brought into court. As the tender was not kept good, it is unavailing.

The right to have the original debt treated as satisfied depends upon whether there is a valid agreement to that effect, and performance by the appellee, for, until he becomes entitled to receive back from his creditor the note sued on, he is not in a situation to make him liable upon the contract of assignment, and, as we have seen, the paragraph under consideration does not show any right in the appellee to the note, and it is therefore bad.

The second paragraph is a peculiar one, and it is difficult to determine upon what theory it was intended to be constructed. Some of its statements indicate that the pleader's purpose was to charge the appellant as an assignor; others that the purpose was to charge him for negligence in failing to use diligence in attempting to enforce the collection of the note deposited with him as collateral security. But whatever view be taken as to the drift of the pleading, it is bad.

If it be considered as seeking to hold the appellant in the capacity of assignor it is bad, because it shows that he is in possession of the note as collateral security under an assignment from the appellee, and there is nothing showing that his right under that assignment has terminated. It is alleged that the contract of sale, on which the notes were given for which the one in suit was pledged as collateral security, was annulled by agreement and the appellant put back into possession; but it is not alleged that the debt, or any part of it, which the appellee owed the appellant was paid. It may well be that the appellant regained possession of the property and still the debt due him from the appellee remain unpaid. In order to make the paragraph sufficient, it is necessary that it should show a payment, or discharge of the debt which the note was pledged to secure, or some enforceable agreement revesting title in the appellee.

Where a plaintiff shows that he has assigned a promissory

note to the original payee, he must, in order to make a cause of action upon the first assignment, show that it came back to him by due assignment or rightful transfer. The complaint before us shows title out of the plaintiff into the person whom he is seeking to charge as an assignor, but utterly fails to show that title was regained. For anything that appears, the title to the note in suit is still in the appellant. Having by his own assignment put title in his adversary, the appellee can not sue on the note, or its incidents, until he gets it out of him.

The paragraph, if regarded as seeking to charge the appellant for a negligent omission to enforce collection of the note, is bad, for the reason that it shows that the makers both died wholly insolvent prior to its maturity. The holder of a note deposited as collateral security is not bound to sue, when it is certain that an action would be fruitless.

The allegations of the third paragraph as to the execution and assignment of the note, as to the disability of Mary Krout, and as to the death and insolvency of Simeon Krout, are the same as those of the paragraphs already examined. It must be regarded as insufficient to entitle the appellee to recover against the appellant for a negligent failure to enforce, or to attempt to enforce, collection of the note. We have given the reason for this conclusion.

The only question, therefore, is whether the paragraph states facts sufficient to charge the appellant as an assignor. It is alleged that, after the assignment of the note to appellee, he transferred and assigned it to appellant, under a written contract, which is substantially as follows: "That John H. Smith, in consideration of the release of all claims in what is known as the Hibernia Mills, by Millard Felton, hereby agrees to assign to Felton an agreement held by him, Smith, signed by Simeon and Mary Krout, and also four notes for the sum of $2,000, executed by them, said Felton agreeing to pay all arrearages of taxes; and the said Felton agrees to assign the above described agreement and notes to John H. Smith, to

secure the payment of the notes hereinafter described, given for the purchase-money of a certain piece of land " (of which a description is given), " for which Millard Felton agrees to pay $1,200, payable in instalments, and to execute his promissory notes therefor; now, the said John H. Smith agrees to release the assignment of the above described agreement and notes when the said Felton shall have paid the full amount of the first three notes, but shall hold said described premises for the payment of the remaining notes, which, if not paid at maturity, this agreement becomes null and void; and the said Felton agrees to keep the premises in repair and pay all taxes." This agreement, and also appellant's assignment to the appellee and the assignment of the latter back to the former, are dated January 25th, 1879, and are, as is evident from the terms of the contract, parts of one and the same transaction. Following the recital of the written contract are these allegations: " That, before the bringing of this suit, the plaintiff and defendant did rescind the contract for the purchase of the land which plaintiff bought of the defendant, and plaintiff did surrender possession thereof to the defendant, and did release all his claims thereto, and the defendant now has all of the said property."

It is the general rule that a contract must be rescinded in whole, and that it can not be rescinded in part, and there is in the complaint before us nothing averred which takes the case out of the general rule. It is no doubt true that parties may by agreement rescind a contract in whole or in part, and may make such terms as they please, but, where there is shown nothing more than that there was a rescission, the inference is that the whole transaction was annulled and the parties reinstated in the situation occupied before the execution of the contract. The meaning of the word rescind is, " to abrogate, annul, avoid or cancel a contract," and rescission signifies the act of annulling or cancelling. The averments of the complaint are, therefore, to be construed as charging that the entire contract was annulled or cancelled.

This is the ordinary signification of the language employed by the pleader. As the complaint upon its face shows that the entire contract was annulled, it necessarily shows that appellee's title to the note sued on was divested, because that title rested solely upon the abrogated contract. If the appellee desired to claim that the entire transaction was not annulled, it was his duty to state the terms upon which the rescission was made; for, in the absence of such a statement, the legal conclusion is that the entire transaction out of which his right to the note grew was abrogated, and that the abrogation of that contract necessarily carried away his right to the note, as that was bound up and included in the cancelled contract.

No other construction can be placed upon the complaint than that all rights conferred by the rescinded contract were annulled and the parties restored to the rights possessed by them at the time the contract was entered into. The effect of the rescission was to restore to the appellant his ownership of the note and cancel the assignment.

It is a familiar rule, illustrated by many cases in our own reports, that a plaintiff, who sues upon a promissory note, must show title in himself. In the case before us the complaint, so far from showing title in the plaintiff, shows it to be in the man he sues.

Judgment reversed, with instructions to sustain the demurrers to each and all of the paragraphs of the complaint.