Lane v. Schlemmer.

Filed April 11, 1888.

No. 13,845.

## Lane v. Schlemmer.

Quieting Title.—*Complaint.*—*Averments of Title.*—Where a complaint to quiet title avers that the plaintiff owns the land in fee, without specifically setting forth his title, the legal implication is that he owns the whole estate absolutely.

Married Woman.—*Mortgage.*—*Promissory Note.*—*Representations.*—*Estoppel.*—Representations by a married woman that she is the purchaser of personal property for which she executes a note and mortgage upon her

separate real estate, which representations are relied upon by the mortgagee in good faith, estop her from denying the truth of such statements.

SAME.—*Duress.*—*Good Faith Endorsee.*—Where a husband, acting in collusion with another, obtains by duress the signature of his wife to a negotiable note and a mortgage to the latter, and in like manner secures an affidavit from her falsely representing that she is the purchaser of the property for which the note and mortgage are given, she may plead the truth as against the mortgagee, but as against an endorsee of the note without notice, for value and before maturity, she is estopped.

TRIAL.—*Suit to Cancel Note and Mortgage.*—*Not Triable by Jury.*—A suit to cancel a note and mortgage is purely of equitable cognizance, and it is not error to refuse a trial by jury.

From the Montgomery Circuit Court.

*M. E. Clodfelter, J. A. Lindly* and *J. V. Maxedon,* for appellant.

*G. D. Hurley,* for appellee.

ELLIOTT, J.—The first paragraph of the appellant's complaint alleges that she owns the land in controversy in fee; that she executed a note and mortgage to James M. Jamison; that she undertook therein as surety for her husband, Samuel Lane; that she was then a married woman, and received no part of the consideration for which the note and mortgage were executed. Prayer that the mortgage be cancelled and her title quieted.

The second paragraph is substantially the same as the first, except that it sets out specifically the title of the appellant.

The third paragraph alleges that the appellant is the owner in fee of the land in dispute, and that she derived it through her first marriage; but it is not averred how she derived title.

The theory of all the paragraphs of the complaint is that the mortgage was void, because it was executed to secure the debt of her husband. Had the third paragraph of the complaint averred that all the title she had was vested in her as the widow of her husband, a very different question would be presented. *McCullough* v. *Davis,* 108 Ind. 292. But this it does not do; on the contrary, it is expressly averred that

she is the owner in fee, and this implies that she owns the whole estate absolutely. Where a plaintiff avers that he owns the land in fee, without specifically setting forth his title, the law declares that he owns the entire estate. *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581.

The theory of the third paragraph of the complaint, as well as of all the others, plainly is that the plaintiff owns the whole estate in the land, and that the mortgage which she seeks to have cancelled was void, for the reason that it was executed to secure the debt of her husband. By this theory the appellant is bound, and upon it, as we understand counsel's argument, they stand. *Mescall* v. *Tully,* 91 Ind. 96, and cases cited; *Western Union Telegraph Co.* v. *Reed,* 96 Ind. 195 (198); *First Nat'l Bank* v. *Root,* 107 Ind. 224; *Green* v. *Groves,* 109 Ind. 519 (522).

There is a general statement, indefinite in form and vague in meaning, in the third paragraph of the complaint, that the appellant was induced to execute the mortgage through "fear of trouble and personal violence at the hands of her husband;" but this mere general conclusion can not control the pleading, for pleadings are not judged by detached sentences; on the contrary, they are judged by their general scope and effect. *Neidefer* v. *Chastain,* 71 Ind. 363 (367).

The third paragraph of the appellee's answer pleads these material facts: The appellee is the owner of the mortgage, having purchased it of the mortgagee in good faith and for value. The note and mortgage were executed for personal property sold to the appellant. She made and delivered to the appellee's endorser an affidavit stating that she executed the note and mortgage to pay for the property she proposed to buy of him; he relied on this affidavit and her representations that she was the purchaser of the property, and that the note and mortgage were executed for her sole use and benefit, and not as the surety of her husband. The endorsee of the appellee believed the facts to be true, had no knowl-

edge to the contrary, and relied entirely on the appellant's representations.

This answer is good. The representations of the appellant as to the fact that she was the purchaser of the personal property, and that the note and mortgage were executed to pay for the property thus purchased by her, estop her from denying the truth of those facts. If the note and mortgage were executed by her to pay for property purchased by her, then they are valid, and that they were so executed she can not deny. The representation is not as to her capacity—not that at all—but as to the character of the contract. We need not, however, further discuss this question, for it has been fully discussed and expressly decided in recent cases. *Ward* v. *Berkshire Life Ins. Co.*, 108 Ind. 301; *Rogers* v. *Union Cent. Life Ins. Co.*, 111 Ind. 343 (27 Am. Law Reg. 50, and note).

We agree with the appellant's counsel that a married woman is not estopped by the mere form or recitals of her contract. *Cupp* v. *Campbell*, 103 Ind. 213. But that rule has no application here, for the answer does not put the defence upon the recitals of the contract. The defence is put upon the positive representations made by the appellant and upon which the mortgagee had a right to rely. We do not hold that mere representations will estop a married woman, but we do hold that where they are acted upon in good faith by the person to whom they are made, and who has no information that would lead him to believe they are not true, they will estop her. If made to one who knows that they are not true, or to one who is chargeable with that knowledge, they will not have the effect of an estoppel. Where, however, to permit the married woman to deny what she has positively affirmed would operate as a fraud upon one who has acted in good faith, she will be held to be estopped. It may be that a mere silence when she should speak will not create an estoppel, but, where she makes positive representations and thus misleads one who acts in good faith, an estoppel will

arise. Mr. Kelly, in the note to *Rogers* v. *Union Cent. L. Ins. Co.*, 27 Am. Law Reg. 50, 52, cites many cases fully supporting this doctrine.

The second paragraph of the reply is addressed to the third paragraph of the answer, and contains these allegations: That the appellant at the time the note and mortgage were executed was a married woman; that they were executed to secure the separate debt of her husband; that they as well as the affidavits were not voluntarily executed by her, but they were procured by fraud and duress; that James M. Jamison fraudulently colluded with her husband to procure her signature to the affidavit, the note and the mortgage; that they agreed between themselves that the sale of the property should in reality be to her husband, Samuel Lane, and that the possession of the liquors, saloon and fixtures should be taken by Samuel Lane, and that he should compel his wife, the appellant, to sign the affidavit, note and mortgage; that they both knew that she was opposed to saloons or anything connected with the liquor business, and that she would not sign the papers, unless through fear and compulsion; that Jamison knew that her husband was in the habit of getting drunk; that when he was under the influence of liquor he was a violent and dangerous man, and that when in such condition the person, and even the life, of the appellant would be in danger should she refuse to sign the papers; that her husband and Jamison, in order to induce her to sign the papers, caused them to be prepared; that, after they were prepared, Jamison furnished Lane with liquor and caused him to become thoroughly intoxicated; that, while Lane was in that condition, they took the papers to the appellant, and, in the presence of the notary public, demanded that she should sign them; that, knowing the disposition of her husband when intoxicated, and knowing that if she refused to comply with his demand she would endanger her life, she did, through fear of personal violence, sign the affidavit, note and mortgage.

We have no doubt that if the note and mortgage were still in the hands of James M. Jamison, the reply would be good. If a man colludes with the husband to secure from the wife a representation, whether in the form of an affidavit or in any other form, he can not insist that the wife is estopped from showing that the representation was not true. *Keller* v. *Orr*, 106 Ind. 406.

The difficulty in the case arises out of the fact that the appellee, Schlemmer, is the *bona fide* endorsee of the note. It is a note negotiable by the law merchant, and, as a general rule, such notes are protected against defences while in the hands of a good-faith holder. The question is whether the case before us is within the rule. The effect of the representations made by the appellant would, in ordinary cases, be to estop the maker of a promissory note from defeating it in the hands of one who acquired it without notice, for value, and before maturity. If these representations do not estop the appellant it must be for the reason that, as she was a married woman, the case is not within the general rule.

Our conclusion is that she must be held bound by the estoppel. It must be known to her, as a matter of law that a promissory note, negotiable under the law merchant, is a subject of commerce, and may be freely bought and sold. Knowing this, she must also know that if she makes a solemn and deliberate representation in the form of an affidavit as to the contract out of which it springs, that representation may be used to induce persons to purchase the note she executes. This, added to the fact that our statute expressly provides that a married woman may be bound by an estoppel *in pais*, seems to close the question against the appellant. Nor is this all, for it has been often decided that she may execute a promissory note for property purchased by her, and that ability to contract is now the rule, and disability the exception. *Arnold* v. *Engleman*, 103 Ind. 512; *Barnett* v. *Harshbarger*, 105 Ind. 410; *McLead* v. *Ætna Life Ins. Co.*, 107 Ind. 394; *Chandler* v. *Spencer*, 109 Ind. 553; *Rosa* v.

*Prather,* 103 Ind. 191; *Bennett* v. *Mattingly,* 110 Ind. 197; *Indiana, etc., R. W. Co.* v. *Allen, supra.*

It is not to be forgotten that the representation upon which the appellee acted was not as to the appellant's capacity to contract, but as to the character of the contract itself. The law fixes her capacity, but she, by her sworn statement, fixed the character of the contract. When she fixed the character of the contract the law entered and fixed her liability. As she gave character to the contract by a solemn and deliberate statement, she can not be allowed to say, as against a man who has acted in good faith, that her contract was not what she swore it was. If the person who acquired the note acted in bad faith, or had notice, then, doubtless, she would not be bound; but unless he had notice, or did act in bad faith, she is bound. This principle is illustrated by the case of *Gardner* v. *Case,* 111 Ind. 494, where it was held that a married woman is bound by a mortgage executed under duress exercised by the husband, but of which the mortgagee had no notice.

Our statute, as we have indicated, greatly enlarges the powers of a married woman. She is invested with the power of contracting to almost as great an extent as a *feme sole.* The common law rule as to estoppel can not, therefore, apply to contracts under our statute. The law upon this point is well settled. Mr. Kelly says: "In proportion, therefore, as the enabling statutes have removed a married woman's disabilities, her capacity to be bound by the doctrine of estoppel is enlarged." Cases illustrating this general rule are cited by the author. Contracts of Married Women, 122. Another author says: "The general rule, as we have seen it laid down, is that the doctrine applies to a *feme covert* only to the extent of her capacity to work an estoppel, *i. e.,* she must be authorized to act in and about the matter involved." Harris Contracts of Married Women, section 559. In our State this capacity is limited only to specific classes of contracts, for, as we have said, the statute confers upon her the

right to execute evidences of indebtedness for property bought by her, and, under the rule stated, this would of itself be sufficient to allow an estoppel to operate against her in such a matter as that here in controversy. But the statute goes much further, for it expressly declares that a married woman "shall be bound by an estoppel *in pais*, like any other person." R. S. 1881, section 5117.

There was no error in refusing a trial by jury, as a suit to cancel a note and mortgage is purely of equitable cognizance. *Voss* v. *Eller*, 109 Ind. 260.

The special finding of facts makes a much stronger case against the appellant than the pleadings do, and as we have discussed all the questions there presented no further discussion is necessary.

Judgment affirmed.

Filed Feb. 15, 1888; petition for a rehearing overruled April 10, 1888.