## PHOENIX INSURANCE COMPANY *v.* OVERMAN.

[No. 2,712.   Filed January 31, 1899.]

INSURANCE.—*Mortgages.*—A judgment against an insurance company on a policy of fire insurance for a loss sustained thereunder will not be reversed for the reason that the insured executed a mortgage on the property in violation of the terms of the policy, where the jury found in answer to interrogatories that the mortgagee had no knowledge of the execution thereof, and the mortgage was never delivered to the mortgagee, nor to any one for him, and there was evidence sustaining such findings. *pp. 517-519.*

SAME.—*Mortgages.*—*Notice.*—The record of a mortgage is not notice

to an insurance company insuring the property of the existence of the mortgage. *p. 519.*

TENDER.—*Bringing Money into Court.*—A tender of money must first be offered to the party entitled to receive it, and, if refused, it must then be paid into court for his use and benefit. Bringing the money into court for the party's use is not sufficient. *p. 519.*

From the Grant Superior Court. *Affirmed.*

*Paulus & Cline,* for appellant.

*Austin De Wolf,* for appellee.

ROBINSON, J.—This was an action upon a policy of fire insurance to recover a loss by fire. The jury returned a general verdict against the company, with answers to interrogatories. It is argued that the verdict of the jury is not sustained by sufficient evidence; that the evidence shows that at the time the policy was issued, there was a chattel mortgage upon the property, which rendered the policy void, under one of the provisions thereof. The policy contained the following provision: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * if the subject of insurance be personal property, and be or become encumbered by a chattel mortgage." It is well settled that an insurance company may insert in its policy the above provisions, and enforce them against a policy holder. *Milwaukee, etc., Ins. Co.* v. *Niewedde,* 12 Ind. App. 145, and cases cited.

Prior to the issuing of the policy, Overman had signed and acknowledged a chattel mortgage to one Allan Dillon on the property afterwards insured, and had caused the mortgage to be recorded in the recorder's office. The mortgage was given to secure a note for $800. But there is no evidence in the record that Overman and Dillon ever agreed that the mortgage should be given, or that Dillon ever requested Overman to give the mortgage; nor is there any evi-

dence that the mortgage was ever delivered to Dillon or to any person for him. Overman testified he never delivered either the note or mortgage. Dillon testified that he knew nothing of the mortgage until after the fire, and that was from hearsay; that in the latter part of 1895 Overman said he would give a mortgage on some outlots, and one Seale was to look after it for him, but this was the only mortgage Seale was to look after for him, that Overman said nothing about giving this mortgage on the chattels. While there was evidence of facts and circumstances going to show that the mortgage was executed within the meaning of the law, yet it is seen there was some evidence from which the jury might say, in answer to interrogatories, that neither the note nor the mortgage was ever delivered to Dillon or to anyone for him. Whether the mortgage was ever delivered to Dillon or to any one for him was a question of fact proper to be found by the jury. The acts and conduct of parties might make a *prima facie* case of delivery, but this could be explained or contradicted by the testimony of the parties themselves. In such case an important question to be determined is whether the mortgagor intended to part with all control over the instrument, and lodge it in the grantee, and this intent must be gathered from all the evidence. The fact of delivery must be determined from the acts done, and from the testimony of the parties. If Overman signed and acknowledged a mortgage to Dillon on the property insured, and did so at the request of Dillon, to secure and indemnify him, and delivered the same to the county recorder for the use and benefit of Dillon, and intended at the time to surrender, and did surrender, all control over the instrument, and the instrument was recorded, it would be a good delivery, and would become a valid lien.

In the case at bar, even if it were conceded that Overman surrendered the control of the mortgage, the evidence not only fails to show that it was ever within the power or control of Dillon or any person for his use and benefit, but the testimony of Dillon himself is that there was no agreement that any such mortgage should be made, and that he knew nothing of its existence until after the loss, and then only from hearsay. See *Purviance* v. *Jones*, 120 Ind. 1§2; *Stokes* v. *Anderson*, 118 Ind. 533, 4 L. R. A. 313; *Stevens* v. *Stevens*, 150 Mass. 557, 23 N. E. 378; *Anderson* v. *Anderson*, 126 Ind. 62; *Vaughan* v. *Godman*, 94 Ind. 191.

It was not necessary that it be shown that Dillon expressly refused to accept the mortgage security. His assent to the contract must be affirmatively shown in some manner before the contract can have any existence. Unless the mortgage was delivered to Dillon, or to some one for his use and benefit, it could not become an effective lien; and as there is some evidence to support the jury's conclusion, we cannot disturb the finding upon that question. The fact that the mortgage had been placed on record before the issuing of the policy was not notice to the insurance company of the existence of the mortgage. *Milwaukee, etc., Ins. Co.* v. *Nicwedde, supra; Shaffer* v. *Milwaukee, etc., Ins. Co.*, 17 Ind. App. 204.

A tender of money, to be sufficient, must first be offered to the party entitled to receive it, or to some one authorized to receive it for him, and, if refused, the money must then be paid into court for his use and benefit. Bringing the money into court for the party's use is not sufficient.

Other errors were assigned, but as they have not been discussed, they are deemed waived. Judgment affirmed.