FISH *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA

[No. 28,274. Filed October 15, 1947. Rehearing denied December 12, 1947.]

*Oren O. Swails,* of Seymour, for appellant.

*Samuel L. Dowden,* of Indianapolis, and *T. H. Montgomery,* of Seymour, for appellee.

EMMERT, J.—This is an appeal from a judgment of the Jackson Circuit Court rescinding and cancelling a life insurance policy in the sum of $1,000 issued by the appellee upon the life of Wayne W. Fish and payable to his mother, Bessie L. Fish, the appellant, as beneficiary, and setting aside and holding for nought a verdict of the jury on a cross-complaint filed by the appellant for full recovery on said policy.

On November 23, 1940, the appellee filed suit against the appellant for rescission and cancellation of the policy by reason of alleged fraud on the part of the insured in obtaining such policy, and on March 22, 1941, the appellee by leave of court, filed an amended complaint for the same relief. The amended complaint did not change the issues, and in substance alleged that the insured, in order to induce the appellee to execute the policy on his life, without requiring him to undergo a medical examination, made 11 separate representations in writing in the application concerning his past and present health, including a statement that he never had tuberculosis of the lungs or any other part of his body; that appellee believed and relied upon said representations, which were material to the risk, and upon reliance of such representations, which became a part of the contract, did issue the policy for $1,000 as set forth in the amended complaint. Appellee further alleged that said representations were false, that in reliance thereon the appellee did execute said policy, but would not have done so if appellee had known the true facts concerning the health of the insured; that for many years prior to November 30, 1938, the insured had been afflicted with and treated for tuberculosis, which was the cause of his death. That appellee did not learn said representations were false until after the death of the insured which occurred

on June 1, 1940; that upon learning the true facts it elected to rescind said policy, tendered to the beneficiary the sum of $52.39 which was the sum of all premiums paid plus interest, which tender was refused, and thereafter paid into court for her use at the time suit was filed.

Appellee set forth in the complaint the incontestability clause of the policy which provided:

> "Incontestability.—This policy shall be incontestable after two years from its date of issue, except for non-payment of premium, but if age of the Insured be misstated the amount of insurance shall be such as the total rate of premium actually paid would have purchased at the correct age, and the loan and nonforfeiture values and all other benefits shall be adjusted accordingly."

Appellee further alleged it had no other adequate remedy at law, and prayed a rescission and cancellation of the policy.

On March 7, 1941, the appellant as beneficiary filed a cross-complaint against the appellee, seeking to recover at law for the full amount of the policy. To this cross action, the appellee filed an answer in two paragraphs, the second of which alleged in substance the same fraud alleged in the amended complaint, that appellee had elected to rescind said contract of insurance and had brought suit to cancel the policy. Before trial the appellee filed a motion requiring the court to make special finding of facts and conclusions of law on the issues joined on the amended complaint. On May 13, 1946, the cause was tried, with the issues joined on the cross action submitted to a jury, which returned a verdict for the appellant in the sum of $1,357.50. On May 24, 1946, the court made and filed its special finding of facts which in substance found for the plaintiff on all issues raised by the amended

complaint, and stated as the conclusions of law that the policy be rescinded and cancelled. There was ample evidence to sustain each finding of the court. The court entered judgment pursuant to said special finding of facts and conclusions of law, that the policy of insurance be rescinded and cancelled, and authorized the tender be paid to appellant. Thereafter on the same day the appellee filed a motion in arrest of judgment for the reason that the policy is cancelled and "there is nothing upon which a judgment in favor of the cross-complaint can rest." The court overruled appellant's motion for judgment on the verdict, motion to modify special finding of facts and conclusions of law and a motion for new trial. The various errors presented by the briefs will be decided without enumerating them at this time.

The main controversy involved in this appeal hinges on appellant's asserted right to have the verdict of the jury on the cross-complaint conclusive as to the issues raised in the amended complaint.

The right to a trial by jury in Indiana is provided by § 20, of Art. 1 of the Constitution of Indiana which states, "In all civil cases, the right to a trial by jury shall remain inviolate." This court has judicially construed this provision as guaranteeing the right to a trial by jury in actions at law which were, prior to June 18, 1852, triable by jury, but it does not and did not intend to require a jury trial of issues which were of exclusive equity jurisdiction prior to the adoption of our Constitution. *Allen* v. *Anderson* (1877), 57 Ind. 388, 389; *McMahan* v. *Works* (1880), 72 Ind. 19-22; *The Lake Erie, &c. Railr'd Co.* v. *Heath* (1857), 9 Ind. 558-561; *Carmichael* v. *Adams* (1883), 91 Ind. 526; Vol. 20,

Indiana Law Journal, pp. 345-346; II Gavit on Indiana Pleadings & Practice, p. 2031, § 318.

The rule has been well summarized in Watson's Works, Practice and Forms, Vol. II, at page 192, § 1523, as follows:

> "The constitution provides that 'in all civil cases, the right of trial by jury shall remain inviolate.' This provision has been construed to mean, as the language plainly imports, that the right 'shall *remain* inviolate', that is, continue as it was. At the time of the adoption of the constitution, the right to a trial by jury in chancery cases, or suits in equity, did not exist. Therefore, there is no right to a trial by jury in such cases under the present constitution, although they are 'civil cases' in the sense that they are not criminal cases. The words 'in all civil cases' mean only such civil actions as, before the adoption of the constitution, were triable by jury."

The Code of 1881 makes statutory provision concerning the method of trial of causes when both legal and equitable actions are involved. It provides:

> "Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct: Provided, That in all cases triable by the court as above directed, the court, in its discretion, for its information, may cause any question of fact to be tried by a jury, or the court may refer any such cause to a master commissioner for hearing and

report." § 2-1204, Burns' 1946 Replacement [Acts 1881 (Spec. Sess.), ch. 38, § 372, p. 240.]

An action to rescind and cancel a written instrument is one in equity. II Gavit on Indiana Pleadings & Practice, p. 2031, § 318; II Watson's Works, Practice and Forms, p. 190, § 1522; *Johnson* v. *Johnson* (1888), 115 Ind. 112, 17 N. E. 111; *Hess* v. *Stout* (1930), 91 Ind. App. 617, 171 N. E. 310; *Stix* v. *Sadler* (1886), 109 Ind. 254, 257, 9 N. E. 905; *Lane* v. *Schlemmer* (1887), 114 Ind. 296, 303, 15 N. E. 454; *Marsh* v. *Morris* (1892), 133 Ind. 548, 555, 33 N. E. 290; 9 Am. Jur. 351, § 3; 9 C. J. 1159, § 4; 12 C. J. S. 943, § 2.

The incontestability clause provided "This policy shall be incontestable after two years from its date of issue, except for non-payment of premium, . . ." The policy was executed December 1, 1938, and after December 1, 1940, the appellee would not have been able to have defeated an action brought on the policy by reason of the fraudulent misrepresentations of the insured. The beneficiary could have delayed commencing an action on the policy until after this time, and in the instant case she in fact did not file her cross action to recover on the policy until March 7, 1941.

Professor Williston in his Treatise on Contracts (Rev. Ed.), § 1880, p. 5298, stated the rule as follows:

"In general, the legal remedy of the insurance company is inadequate whenever there is a clause in the policy providing that after a certain period of time the issue upon which cancellation is sought shall be incontestable, since even though the loss has occurred, there is no certainty that the beneficiary will bring action within the time during which the insurer has the right to contest the claim. . . ."

The appellee in this case was in grave danger of losing its right to rescind the contract or successfully defend an action thereon, at the time it commenced a suit for rescission and cancellation of the policy, and clearly had no adequate remedy at law. If the period to contest the policy for fraud had expired the appellee would be barred from claiming relief therefor. *New York Life Ins. Co.* v. *Adams* (1930), 202 Ind. 493, 176 N. E. 146; *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 16, 101 N. E. 289; *Ebner, Admr.* v. *Ohio, etc., Ins. Co.* (1918), 69 Ind. App. 32, 48, 121 N. E. 315. Therefore, equity had properly acquired jurisdiction of the subject matter of the action.

The appellant, if she cared to do so, could have commenced an action at law on the policy after the death of the insured and before the time suit was instituted to rescind and cancel. If she had done this, the appellee would have been forced to plead the fraud as a defense in an action at law, and a jury trial on the issues so formed would have been proper. *New York Life Insurance Co.* v. *Skinner* (1938), 214 Ind. 384, 14 N. E. (2d) 566; *Federal Life Ins. Co.* v. *Relias* (1933), 99 Ind. App. 115, 121, 185 N. E. 319; *Enelow* v. *N. Y. Life Ins. Co.* (1935), 293 U. S. 379, 79 L. Ed. 440; *Adamos* v. *N. Y. Life Ins. Co.* (1935), 293 U. S. 386, 79 L. Ed. 444, 97 A. L. R. 572.

The appellant insists that she was denied the right to a trial by jury as guaranteed by the Constitution of Indiana when the trial court refused to enter judgment on the verdict of the jury and set the same aside and entered judgment on its own special finding of facts and conclusions of law on the issues joined on the amended complaint, but the verdict of the jury and the

special finding and conclusions of the court could not both stand at the same time.

In an action on a note and to foreclose a mortgage, which was of exclusive equitable jurisdiction prior to the adoption of the Constitution, Judge Elliott in *Carmichael* v. *Adams* (1883), 91 Ind. 526, 527, 528, in denying the right to a trial by jury on the issue of indebtedness on the note, said:

> "It would lead to confusion and injustice to direct . separate trials in such cases. Should a jury find. there was no right to recover on the note, and the court adjudge that there was a right. to recover on the mortgage, there would then be a conflict not easily overcome. .To be sure, the court might set aside the verdict and grant a new trial, but this, after all, would leave the control with the court, and it might just as well be there in the first instance. If, however, it be said that the court may not disturb the verdict, then we should have two conflicting decisions in one case upon the question of the defendant's indebtedness, and in that event no final result could ever be reached.

> "We know of no case where it can be necessary to go through two trials before different tribunals, one the jury and the other the court, to end one suit, reach one result, and secure one decree. We are not willing to create such a case."

We feel this logic applies to the issue in this appeal.

When equity has taken jurisdiction of an equitable cause it will not be ousted of that jurisdiction by reason of the fact that subsequent legal proceedings are instituted concerning the same controversy. 19 Am. Jur. 112, § 105, Annotation 73 A. L. R. 1529; 21 C. J. 134, § 117; 30 C. J. S. 414, § 67.

In *New York Life Ins. Co.* v. *Seymour* (1930), 45 F.· (2d) 47, 49, 73 A. L. R. 1523, 1528, the court reasoned:

"Thinking, as we do, that in the present case the court of equity acquired jurisdiction of the controversy when the bill was filed, it would be enough to say that the jurisdiction rightfully so acquired is not lost because a suit at law is later commenced. Equity jurisdiction is not lost if, after the filing of the bill, an adequate legal remedy becomes available. (*Dawson* v. *Kentucky*, 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638), nor if the right to any equitable relief disappears (*Clark* v. *Wooster*, 119 U. S. 322, 7 S. Ct. 217, 30 L. Ed. 392.) See also *Liberty Co.* v. *Condon Bank*, 260 U. S. 235, 244, 43 S. Ct. 118, 67 L. Ed. 232. However, we are not satisfied to rest the result on such fortuitous priority. The principles of jurisdiction involved lead, we think, to the conclusion that, under this type of incontestable policy, and while the right to make this defense at law remains subject to the control of the other party, a court of equity has the right to accept, hear, and decide the issue whether the policy was fraudulently procured; and the plaintiff, having invoked a jurisdiction which was ample, and was not discretionary but absolute, has a right to have that jurisdiction exercised, rather than abdicated or suspended. Cf. *McClellan* v. *Carland*, 217 U. S. 268, 281, 30 S. Ct. 501, 54 L. Ed. 762."

Since the appellant failed to bring an action at law on the policy which would have entitled her to a jury trial on the issues, she can not now be heard to complain that equity took jurisdiction, and so taking jurisdiction, proceeded to adjudicate the rights of the parties and give complete relief. She was not deprived of any right under the Constitution of Indiana or under § 2-1204, Burns' 1946 Replacement.

The appellant also insists that the tender to her of the premiums paid by the insured plus interest was not refused by her and that the amount was insufficient. Where a tender, otherwise valid, is properly made, the person to whom such

tender is made cannot, by his own failure to reject the tender, prevent the rights of the tenderer from ripening into a cause of action. However, while there was evidence in the record that at the time the premiums were tendered she did not make an unqualified refusal, there was also evidence in the record that appellant's attorney did make an unqualified refusal. This refusal was binding upon the appellant. The amount tendered was paid into court for the use of the appellant at the time suit was commenced, which kept the tender good.

The appellant's brief fails to advise this court as to the alleged shortage in the amount of money tendered. The brief does admit that it was only a few cents of interest. By failing to point out to this court the exact amount alleged to be due the appellant, she has waived any deficiency in the amount tendered. Moreover, if the shortage was only a few cents of interest, as she admits, it fails clearly with the maxim, *"De minimis non curat lex."* 22 C. J. 662; *Matzger v. Page* (1911), 62 Wash. 170, 113 P. 254.

The judgment of the trial court is affirmed.

NOTE.—Reported in 75 N. E. (2d) 57.