## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* SMITH

[No. 28,983. Filed October 7, 1952. Rehearing denied December 5, 1952.]

404

*Stuart, Devol, Branigan & Ricks,* of Lafayette and *Harker & Irwin,* of Frankfort, for appellant.

*Jones & Cook,* of Kokomo; *Hudson & Ewan* of Lafayette, and *Robert E. Million,* of Monticello, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict for appellee for $10,000 for breach of an insurance policy issued on the life of Robert J. Smith who named appellee, his father, as beneficiary. Prudential executed the policy on September 9, 1946, in the face amount of $5,000, with the further provision that in the event of the death of the insured by accidental means, Prudential would pay an additional $5,000. On November 3, 1946, the insured was killed as a result of an automobile and bus collision on a public highway of this state.

For the purpose of deciding the controlling issue here, it is possible to assume as true appellant's statement of the material facts, as follows:

"In the application for the policy, insured, who was the son of his beneficiary, appellee herein, stated that he had never made claim for sickness, etc., or other benefits, that he had not consulted, or been attended by, a physician for the past three years, that he had never had an X-ray, electrocardiogram or blood study, that he had no physical defect or infirmity, that he had never had heart disease or any serious illness, that he had never been in a hospital or other institution for observation, diagnosis or treatment, and that the foregoing statements contained complete details as to any illness and sojourns in hospitals and similar institutions that he had had. The application was executed September 9th, 1946, and on November 3rd, 1946, less than two months after the issuance of the policy, insured died from accidental causes."

"Insured was in the armed forces of the United States until May, 1946. In March, 1946, he contracted rheumatic fever, which resulted in a leaking of two major valves in his heart. He was in Fort Lawton Station Hospital and Madigan General Hospital from March until May, during which time, according to the testimony of Dr. Straub, who treated him, and records, including his certificate of disability for discharge and his application for disability benefits, both of which were signed by insured, he had this double leakage of the heart, had been in two hospitals, had had X-rays, electrocardiograms and blood studies, had been treated by at least two doctors and, at the time of his discharge, he had applied for, and thereafter received during his lifetime, *total disability payments* of $115 per month,

and was discharged *on the basis of total disability.*" (Appellant's emphasis.). . . .

"When the application was prepared, insured gave the information to appellant's agent, who recorded the answers on the application as they were given to him. Appellant waived a physical examination because appellee appeared to be in good health and appellant did not require a physical examination for a policy in this amount.

"After insured's death, appellant learned of his physical disability and declined payment and tendered the return of one premium paid with interest, which tender was refused."

Appellant filed an answer in three paragraphs to appellee's amended complaint, the first paragraph alleging answers made by the insured on the application were warranties, which were false and untrue and so known at the time they were made, which induced Prudential to execute the policy; that Prudential on March 6, 1947, "tendered to the plaintiff herein (appellee) repayment of the premium theretofore paid by said decedent (insured), together with interest thereon to date of tender, which tender was refused." The second paragraph of answer in substance alleged that the representations contained in the same answers were false and untrue, that they were made to and did induce Prudential to execute the policy sued upon, and that tender back of the premium was made to the beneficiary, which was refused. The third paragraph of answer admitted some and denied other allegations of the amended complaint, but the issues under this paragraph are not material to the decision here. Nor do we regard the reply as forming issues material to this decision.

It will be noted that neither paragraph of answer alleged that Prudential elected to rescind the contract of insurance, although there was evidence that it did so elect, but there was no allegation and there was no evidence that Prudential paid into court, for the use of the appellee, the amount of the tender which had been refused.

Appellant's position here is that the judgment must be reversed on the authority of *National Life & Accident Ins. Co.* v. *Ransbottom* (1940), 217 Ind. 452, 28 N. E. 2d 78, hereafter referred to as the Ransbottom case. In this case the second paragraph of answer alleged the company elected to rescind and tendered back the amount of the premiums paid, and that the company " 'now brings into open court and herewith tenders the sum of Eight and 33/100 ($8.33) Dollars, which said sum is the amount of premiums paid under the provisions of said policy.' " The appellee contended that the company had failed to keep the tender good by paying the money into court, and the decision was on that assumption. This case stated that "It is clear beyond dispute that the insured had an incurable cancer," and held that "Under the undisputed facts the defendant was entitled to a decree canceling the contract."

This court is reluctant to overrule its own precedents if there is any justification in legal principles by which they can be sustained, but on the other hand ▇ when a case has overruled what had been previously decided to be the law, and the new rule cannot be supported under any of the rules of substantive or adjective law, the precedent should be overruled.

As has been well stated in a recent authority on pleading and practice in this state, "It is a very com-

mon thing to see a pleading termed an 'answer and counter-claim' or an 'answer and cross-complaint.' This is a plain contradiction in terms. The same pleading cannot, at the same time, be a counterclaim, or cause of action, and a defense." 2 Lowe, Works' Indiana Practice §17.17, page 18. See also I Watson's Works' Pr. & Forms §§584, 673, and I Gavit, Ind. Pl. & Pr. §143. The facts stated determine whether the pleading is in fact an answer or a cross-action.

As we construe the pleadings designated as the first and second paragraphs of answer, they are in fact answers. They ask for no affirmative relief, and if they did they would be insufficient as cross-actions for want of equity. *Fish* v. *Prudential Ins. Co.* (1947), 225 Ind. 448, 75 N. E. 2d 57; *Nichols* v. *Pacific Mut. Life Ins. Co. of California* (1936), 84 F. 2d 896, 897.[1] They merely seek to defeat plaintiff's cause of action on the policy.[2]

Appellant's position here is that appellee has waived any question of failure to allege and prove that the

[1] In the Fish case, we held equity properly took jurisdiction of a complaint to cancel a policy after the death of the insured when the period to contest the policy was about to expire. We said, "The appellant, if she cared to do so, could have commenced an action at law on the policy after the death of the insured and before the time suit was instituted to rescind and cancel. If she had done this, the appellee would have been forced to plead the fraud as a defense in an action at law, and a jury trial on the issues so formed would have been proper." *Fish* v. *Prudential Ins. Co.* (1947), 225 Ind. 448, 455, 75 N. E. 2d 57.

[2] In the Ransbottom case (217 Ind. 452, 28 N. E. 2d 78) the company erroneously designated a counterclaim as a fourth paragraph of answer. The prayer was for a "Cancellation of the said policy," and the court, without noticing the lack of equity in the counterclaim, by its mandate to the trial court, ordered cancellation.

tender of the amount of the premium received by Prudential was paid into court for the use of the beneficiary. Although §2-1011, Burns' 1946 Replacement, has been construed to waive defects in an answer when not questioned by a demurrer, this statute does not dispense with proof of a cause of defense. "It was intended to reinforce other statutes providing that, after verdict, pleadings should be deemed amended as to such defects so as to conform to the evidence; but it was not the purpose to dispense with the proof of facts essential under the law to constitute a cause of action *or a cause of defense.*" (Italics added.) *Prudential Insurance Co. of America* v. *Ritchey* (1918), 188 Ind. 157, 163, 119 N. E. 369, 370. See also *Cassell* v. *Cochran* (1943), 114 Ind. App. 115, 118, 50 N. E. 2d 668, 51 N. E. 2d 21. If Prudential was required to keep the tender good by paying it into court, appellee did not waive this burden of proof by failure to demur to the answer. If Prudential had in fact paid the amount of the premium into court but not alleged such deposit, a different question would be presented.

It is quite clear that when a party asserts that he has been defrauded into entering into a contract, or the other party has breached a material warranty therein, the injured party is put to his election to determine whether he will affirm the transaction, which will entitle him to damages for the fraud or the breach of warranty, or elect to rescind the contract for the fraud or breach of warranty. The contract is voidable at the election of the injured party. *State Life Ins. Co.* v. *Jones* (1910), 48 Ind. App. 186, 187, 92 N. E. 879; *Commercial Life Ins. Co.* v. *Schroyer* (1911), 176 Ind. 654, 95 N. E. 1004; *Brotherhood of Railroad Trainmen* v. *Virden* (1940), 216 Ind. 324, 24 N. E. 2d 934. If he elects to affirm the transaction,

he has his remedy by way of damages. If he elects to rescind, he must return back what he has received, and in turn he is entitled to receive what he has parted with. *Love* v. *Oldham* (1864), 22 Ind. 51.[3]

It logically follows that an answer which merely charges fraud does not state a cause of defense; the defendant must plead a proper rescission to do that. 4 Watson's Works' Pr. & Forms, p. 1186, note 3, and cases therein cited.

Before the decision in the Ransbottom case, *supra*, (217 Ind. 452, 28 N. E. 2d 78), the law was well settled in this state that an insurer, if it elected to rescind, had to plead and prove the fraud, the election, the tender back of the consideration, and if refused, the payment of the premiums in court for the use of the party entitled thereto, who would be the beneficiary if the policy had been issued on the life of the insured. *Grand Lodge, etc., Trainmen* v. *Clark* (1920), 189 Ind. 373, 381, 127 N. E. 280, 18 A. L. R. 1190. In this case it was said, "A tender of money, to be sufficient, must first be offered to the party entitled to receive it, or to some one authorized to receive it for him, and, if refused, the money must then be paid into court for his use and benefit. *Phoenix Ins. Co.* v. *Overman* (1898), 21 Ind. App. 516, 52 N. E. 771." The Appellate

---

[3] "A contract induced by fraud, false representations, deceit, mistake, duress, or undue influence, or, generally, which is rescindable for any legally sufficient cause, is not, as a rule, void, but is only voidable. If the injured party chooses to abide by it, there is nothing to prevent him from doing so, and in that case the other party will be legally bound to fulfill the contract. On the other hand, if the injured party chooses to rescind the contract, he has the right to do so, and the contract will be thereby abrogated for all purposes. He is therefore put to his election either to rescind the contract or to affirm it." 3 Black, Rescission and Cancellation (2d Ed.) §561, p. 1378.

Court correctly stated the principles involved in a defense of rescission in *Sofnas* v. *John Hancock Mutual Life Ins. Co.* (1939), 107 Ind. App. 539, 542, 543, 21 N. E. 2d 425, as follows:

"It is the law of Indiana that in all cases of rescission of a contract the party rescinding must restore or offer to restore everything of value which he has received under the contract. *Modern Woodmen of America* v. *Vincent* (1907), 40 Ind. App. 711, 80 N. E. 427. It is further the law that where a tender back is necessary in order to effect a rescission of a contract of insurance, such tender to be sufficient must first be offered to the beneficiary named in the policy. *American Central Life Insurance Co.* v. *Rosenstein* (1910), 46 Ind. App. 537, 92 N. E. 380; *Grand Lodge, etc.* v. *Clark* (1920), 189 Ind. 373, 127 N. E. 280. It is further the law that a tender of money to be sufficient must first be offered to the party entitled to receive it and, if refused, the money must then be paid into court for his use and benefit (*Phoenix Ins. Co.* v. *Overman* (1899), 21 Ind. App. 516, 52 N. E. 771; *Grand Lodge, etc.* v. *Clark, supra; State Life Ins. Co.* v. *Pletcher* (1922), 78 Ind. App. 128, 134 N. E. 876.) These rules and the cases supporting them were all before this court in the case of *National Council etc.* v. *Walton* (1923), 79 Ind. App. 574, 575, 136 N. E. 25, and the court stated the rule very succinctly in the following language:

" 'In this jurisdiction the rule is well established that where an insurer desires to rescind the contract on the ground of fraud, it must return, or offer to return, the consideration within a reasonable time after acquiring knowledge of the fraud; but if there be no rescission during the life of the insured, then, after his death, the insurer must tender the consideration to the beneficiary within a

reasonable time after acquiring knowledge of the fraud, and if the beneficiary refuses to accept the consideration, the money must be brought into court for the use of the beneficiary. Failure to comply with this rule amounts to a waiver of the fraud.' "

Although the cases often use the term "waiver" where there has been no attempt to rescind, it is rather an election implied in law to affirm the transaction, for the fraud could still be the basis of a cause of action for damages. 3 Black, Rescission and Cancellation (2d Ed) §561. The requirement of the restoration of the status quo is based on the equitable maxim that "he who seeks equity must do equity." 3 Black, Rescission and Cancellation (2d Ed.) §617, p. 1485; 9 C. J. 1207, §93.

Under the issues tried by the jury, the jury was required to render a general verdict. Sections 2-2021 and 2-2022, Burns' 1946 Replacement. The amount of recovery was required to be stated if the jury found for the plaintiff. Section 2-2024, Burns' 1946 Replacement. "When a trial by jury has been had, and a general verdict rendered, the judgment must be in conformity to the verdict." Section 2-2501, Burns' 1946 Replacement. There was no cross-issue presented by way of counterclaim upon which the jury or the court was required to return a verdict or make a finding. The jury could not return a conditional verdict under the statutes, and no conditional judgment could be based on a general verdict. If Prudential had kept its tender good by paying it into court for the use of the appellee, and the jury had found for Prudential, the judgment on the verdict would have vested the beneficial title to the returned premiums

in appellee without more, and complete restitution made to the beneficiary under the policy.[4]

In *New York Life Insurance Co.* v. *Skinner* (1938), 214 Ind. 384, 14 N. E. 2d 566, this court held that there was no necessity for equity to cancel an insurance policy when there was a full, adequate, and complete remedy at law by setting up a defense of fraud, and cited with approval the case of *Enelow* v. *New York Life Insurance Co.* (1935), 293 U. S. 379, 55 S. Ct. 310, 79 L. Ed. 440, which held to the same rule. However, the latter court in *American Life Ins. Co.* v. *Stewart* (1937), 300 U. S. 203, 57 S. Ct. 377, 81 L. Ed. 605, recognized that it was unnecessary to resort to equity to cancel a policy where fraud in the procurement of a policy of insurance could be proved in an action at law on the policy, but called attention to the possible loss of evidence and a cause of defense by reason of the incontestability clause, and that it might be proper to hold an action to cancel in abeyance until disposition of subsequent actions at law on the policies had been made. In the appeal at bar, however, there were no special circumstances to warrant equity taking jurisdiction, and Prudential was not threatened with a loss of its defense at law, or right to cancel as was the case in *Fish* v. *Prudential Ins. Co.* (1947), 225 Ind. 448, 75 N. E. 2d 57, *supra.* We fail to find special circumstances in the Ransbottom case, *supra,* (217 Ind.

---

[4] "It is the general rule that a contract must be rescinded in whole, and that it can not be rescinded in part . . . It is no doubt true that parties may by agreement rescind a contract in whole or in part, and may make such terms as they please, but, where there is shown nothing more than that there was a rescission, the inference is that the whole transaction was annulled and the parties reinstated in the situation occupied before the execution of the contract." *Smith* v. *Felton* (1882), 85 Ind. 223, 227.

452, 28 N. E. 2d 78) to give equity jurisdiction to cancel; therefore, we believe its holding that the insurer was entitled to a decree of cancellation was error.

The right to rescind for a breach of warranty in a policy of insurance requires an election to rescind and a tender back of the premiums. *Commercial Life Ins. Co.* v. *Schroyer* (1911), 176 Ind. 654, 656, 657, 95 N. E. 1004; *State Life Ins. Co.* v. *Jones* (1911), 48 Ind. App. 186, 187, 92 N. E. 879; *Modern Woodmen, etc.* v. *Young* (1915), 59 Ind. App. 1, 108 N. E. 869; *U. S. etc. Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345, 83 N. E. 706; 16 Appleman, Ins. Law and Pr., §9304, p. 909. Assuming without deciding that the statements as to the health of the insured were fraudulent and had the effect of warranties under §39-4206 (5), Burns, 1952 Replacement, after the tender had been refused, it should have been paid into court for the same reasons required by an insurer when it elects to rescind for fraud.

The opinion in *National Life and Accident Ins. Co.* v. *Ransbottom* (1940), 217 Ind. 459, 28 N. E. 2d 78, *supra,* in so far as it is in conflict with this opinion, is overruled. There is no contention made in this appeal that the policy was not executed, or the premium not paid. Appellant tendered back the premium plus interest to the named beneficiary after death of the insured, which tender was refused by the beneficiary, but there was no payment into court of the amount of the tender for the use of the beneficiary. The jury had the right to find the insured died by accidental means as covered by the policy. The defenses of rescission for breach of warranty and for fraud were affirmative defenses. Even assuming the representations were material and constituted a breach of warranty and a fraud which would justify a rescission of the policy,

still Prudential was not entitled to defeat the action without keeping the amount of the tender good by paying the amount into court. Therefore, it is unnecessary to decide further causes for a new trial which question the giving and receiving of certain instructions, and the admission and rejection of certain evidence which related to the defense of rescission. There was no error in the court overruling the motion for a directed verdict, and the verdict was sustained by sufficient evidence and not contrary to law. The court did not err in overruling appellant's motion for judgment on the jury's answers to interrogatories notwithstanding the general verdict.

Judgment affirmed.

Bobbitt, J., dissents.

NOTE.—Reported in 108 N. E. 2d 61.